Hah., Judge.-
 

 The act of 1715
 
 (Rev. c.
 
 G) declares, that where a survey is to be made upon a navigable river or creek, the surveyor shall run a full mile in a direct course into the woods, and each opposite line shall run parallel with the other, if it can be admitted, for other people’s lines, or rivers or creeks.
 
 It
 
 is provided also, that not more than six hundred and forty acres shall be laid out in one tract. The act of
 
 1777 (Rev. c.
 
 114, s. 10) declares, that where any survey shall be made upon any navigable water, the water shall form one side of the survey. The same act provides the mode, of entering and surveying islands in navigable waters. It appears from these acts, that the beds of pavi-gable waters, and of navigable rivers and creeks, cannot be the subject of entry and survey. Therefore, the plaintiff, in the present case, cannot derive title to the fishery in question, by grant from the state, as he might do for lands, under those acts of Assembly. And if he
 
 *61
 
 has title, it must be derived by some other mode of acquisition*
 

 The ebb. and-flow of the tide is not a proper criterion to determine whether a river of this state is naviga* We.
 

 It seems,
 
 tha£-a fishery in a ri-i ver which is not affected by the ebb and flow of the tide, but which is in fact navigable, belongs to the riparian proprietor.
 

 In England, a- river- is- said to be navigable, where the tide flows and reflows. Where that is not the case, they are said not to be navigable. In the latter case, the proprietors of the land on the river, have the right of fishing on their respective sides, to the middle of the
 
 stream'
 
 — ad
 
 filum medium aquce (Carter
 
 v.
 
 Murcot
 
 4
 
 Bur.
 
 2163
 
 Rex
 
 v.
 
 Smith Doug.
 
 441).
 

 This definition of a navigable river seems not to be applicable to rivers in this state. They are in fact navigable fbr all the purposes of public convenience, in many places beyond the influence of the tide. Eut perhaps, at a point beyond the purposes of navigation, they may not be so considered, that is, to bo free fisheries. In England, the reason why the king has an interest in a- navigable river, as far as the sea ebbs and flows in it, is because such a river pax’ticipates of the nature of the
 
 sea;
 
 and is said to be a branch of the sea as far as it flows ; and consequently he is, entitled' to the fishery in it; For it is said the king hath dominion over the sea,; and that every subject hath a right to fish in the sea, and in a navigable river belonging to the king.
 
 (Davin Rep.
 
 252,
 
 Warren
 
 v.
 
 Matthews
 
 6
 
 Mod.
 
 73.) From these premises it would result, that the fishery in a river which was navigable, but which was not identified with the flowing of the sea, by being subject to the ebbing and tides, would belong to the riparian proprietor. On such a case, however, it would be improper to give an opinion. Such is not the case before the court. The Pcd.ee River, at the place where the trespass is alleged to have been committed, is not a navigable river, but a private one. And the owners of the land on each side of it have a right to. the middle of it. The same may be said of rivers which divide nations.
 
 (Handly
 
 v. Anthony, 5
 
 Wheat.
 
 374.)
 

 Altho’ these franchises or fisheries are not granted by the state as lands are by law granted, yet when the lands adjoining such rivers are granted, the right of fishing vests in such grantees, and gives them the right, of fish
 
 *62
 
 ing to the middle of tbe stream, in the water opposite their land; but not the right of fishing in water above or below the banks which belong to them.
 

 Per Curiam. — Judgment reversed.*.