WILLIAM HODGES v. SAMUEL WILLIAMS et als.

### *Navigable Waters—Entry and Grant—Riparian Owner—Relicted Land.*

1. Land covered by navigable water is not the subject of entry and grant.

2. By the common law the criterion whether a water was navigable was the ebb and flow of the tide, but this test has no application to the waters of this State, where the test is, whether or not the water is navigable for sea vessels.

3. A water way lying wholly within a State, and not connected with other waters leading to the sea, is not navigable under the laws of the United States.

4. The riparian owner of land bordering on a river which is technically not navigable, but which is used as a highway of commerce, owns the land in the bed of the river, subject to an easement in the public to use the river for the purposes of transportation.

5. A lake fifteen miles long and eight miles wide, which is three and one-half feet deep, and which has no important inlet, and does not form a link in a chain of water communication, is not navigable.

6. The riparian owner of land on the bank of an unnavigable stream has no title *ad filum aquæ* if the State has granted the bed of the stream to another.

7. Where the bed of an unnavigable stream has been granted, a riparian proprietor is not entitled to land made by a withdrawal of the waters.

8. Where land is relicted by a sudden withdrawal of navigable waters it belongs to the sovereign, but where the withdrawal is gradual it belongs to the riparian proprietor.

(*Collins* v. *Benbury,* 3 Ired., 277; *State* v. *Glenn,* 7 Jones, 321; *Wilson* v. *Forbes,* 2 Dev., 30; *Williams* v. *Buchanan,* 1 Ired., 835; *Ingram* v. *Threadgill,* 3 Dev., 58, cited and approved; *Broadnax* v. *Baker,* 94 N. C., 675, distinguished and approved; *Den* v. *Sermon,* 1 Hawks, 56, overruled).

EJECTMENT, tried at February Term, 1886, of HYDE Superior Court, before *Gudger, Judge.*

A jury trial was waived, and the Court found the facts as follows:

That the land in dispute was granted by the State, a portion thereof to John Hall in 1795, and the remaining portion in 1819 to Green Hill.

That the plaintiff is the owner and in possession of the land set out and described in the plat hereto annexed, beginning at the figure 7 thereon, running thence to 8, 9, 10, 11, 13, 38,

12, 31, 29, 1, 25, 7; that the beginning thereof is at a gum stump on the margin of Mattamuskeet Lake at 7, thence running by 8, 9, 10, &c., to a pine at 38 on the margin of said lake, thence along the margin of said lake by 12, 31, 29, 1, 25, to the gum stump at 7, the beginning.

The plaintiff does not connect himself with either of the grants heretofore mentioned, but shows color of title and possession thereunder, since 1824, of the land contained in the boundaries above set out, beginning at the figure 7. It is admitted that he is the owner and in possession of the said land within the boundaries above named.

The land in dispute was covered by the waters of Mattamuskeet Lake in 1824, and has since that time "grown up" or been made, (to use the words of the witnesses), by the gradual and imperceptible recession of the waters of said lake, and left bare by reason of the drainage by the canals and by evaporation. The recession of the waters of the lake was first indicated and made apparent by the gradual appearance of two islands in the lake near the shore, and the land in controversy, (of which the said islands are a part), has been gradually and imperceptibly left bare by the recession of the water. The land has been making, since the waters were taken down by the canals, and not much before, if any. The land admitted to be the land of the plaintiff, is immediately adjoining the land in dispute, which first mentioned land runs down to the water's edge of said lake as it was in 1824.

That Mattamuskeet Lake is fifteen miles long and eight miles broad, and until the cutting of the canals hereinafter mentioned, had no known or visible outlet to, or connection with other waters. That fifty or more years ago, the water in the deepest part of the lake was from eight to eleven feet deep; that forty years ago it was six feet deep, and that it is now about three and one-half feet deep. That about the year 1835, and soon thereafter, three canals were cut, connecting said lake with Pamlico Sound, and that in consequence thereof, some of the water of said lake was rained off and into the said sound.

That from the earliest recollection of the witnesses, fifty or sixty years ago, the said lake has been navigated by canoes. That at one time, a flat-bottomed vessel, with a mast and sail, carried corn, staves and other produce from one side of the lake to the other, and that about 1862 or 1863, an open boat passed through and out of said lake, through one of the said canals, into Pamlico Sound, and thence to New Bern, N. C., loaded with and carrying produce and other articles to the said market.

The defendants introduced no evidence. The plaintiff has never had the possession of the land in dispute, and the defendants have been in possesssion thereof for four or five years prior to the commencement of this action, and are still in possession thereof.

Upon the facts found above, the Court was of the opinion that the plaintiff was entitled to recover the land mentioned in the complaint.

From the judgment the defendants appealed to the Supreme Court.

*Mr. E. F. Aydlett,* for the plaintiff.
*Mr. Geo. H. Brown, Jr.* (*Mr. J. W. Albertson* was with him on the brief), for the defendants.

ASHE, J. (after stating the facts). In considering the questions involved in this appeal, that which presents itself *in limine* is, whether Mattamuskeet Lake is a navigable water. If navigable, then the land covered by its waters is not the subject of entry and grant, and the doctrine of accretion applies, but if not navigable, then the soil underlying its waters is the subject of entry and grant, and when granted, is the private property of the grantee.

By the common law, the criterion for determining whether a water was navigable or not, is the ebb and flow of the tide, extending so far up the rivers entering into the sea as there is a flux and reflux of the tide. Gould on Water Courses, §42.

But the tidal test has no application to the rivers and other waters in this State, as it has not in any of the other States.  It has been decided in most of the States as inapplicable to the geographical condition of this country.

The decisions of the Courts in the different States of the Union are so diverse on this question, that it is needless to go beyond our own decisions to determine what are navigable waters.

The criterion adopted by this Court in several adjudications upon the subject, is that all waters which are actually navigable for *sea vessels,* are to be considered navigable waters under the laws of this State.

In *Collins* v. *Benbury,* 3 Ired., 277, it is held, that a navigable stream in this State, does not depend upon the common law rule, but waters which are sufficient in depth to afford a common passage for people in *sea vessels,* are to be taken as navigable.   And in *State* v. *Glenn,* 7 Jones, 321, Judge BATTLE in his opinion used this language: " We hold that any waters, whether sounds, bays, rivers, or creeks, which are wide enough and deep enough for the navigation of *sea vessels,* are navigable waters, the soil under which is not the subject of entry and grant under our entry laws."   And in *Wilson* v. *Forbes,* 2 Dev., 30, the Court made it no question as to what general rule was to be adopted to determine the character of a water-course, but held that a stream eight feet deep, sixty yards wide, and with an *unobstructed navigation for sea vessels from its mouth to the ocean,* is a navigable stream, and its edge *at low water-mark* is the boundary of the adjacent land, and it was in that case held, that any water-course not navigable for *sea vessels,* but capable of being navigated by boats, floats and rafts, technically styled navigable streams, are the subject of special grant by the State under the entry law.

This lake is not a navigable water under the laws of the United States, for it has been held in 11 Wallace, 411, that a water-way wholly within a State, and not connected with other waters,

rivers, and streams leading to the sea, is not navigable. But this lake had no such connection.. Being then not a navigable water under the laws of the United States, the question remains, is it navigable under the laws of this State? According to the definition of navigable waters as given in these cases, they must be navigable for *sea-going vessels.* But this rule has been somewhat modified by the recent decision of this Court in the case of *Broadnax* v. *Baker,* 94 N. C., 675.

But that decision is not really inconsistent with the authorities cited. It only qualifies them by holding that in this State, the question whether a water is navigable, not in a technical sense, but as a public highway, has reference to the operation of our entry laws upon their underlying beds. The principle there decided is, that whenever a water-course has a capacity to float freight and passenger boats, whereby they become highways or channels of commerce, the right to use them as such, becomes paramount to any rights of a riparian proprietor, or even the owner of the soil over which the waters flow. The consistency is apparent in what is said in the opinion in *State* v. *Glenn, supra,* where the grant covered the soil under the stream: "As the riparian proprietor of the land on both sides of the stream, he is clearly entitled to the soil clear across the river, *subject to an easement in the public for the purposes of the transportation of lime, flour and other articles in flats and canoes."* It was in this sense only that the water of the lake was navigable, if at all, for the bed of the lake had been the subject of entry, as we will hereafter show.

We have not overlooked the fact that it was held in *Den* v. *Sermon,* 1 Hawks 56, to be navigable. But that case does not seem to have occupied very seriously the attention of the Court, nor does the report of the case disclose what was the evidence in the Court below upon the question of its navigability.

But in the case before us, the facts are, that fifty or more years ago, the water in the deepest part was from eight to eleven feet deep, but what portion of it was that depth is not made to appear.

Forty years ago it was in the deepest part six feet deep, and at the commencement of this action only three feet in depth. This reduction in the depth of the lake has been effected gradually and imperceptibly by three canals, cut about the year 1835, and within a few years thereafter, connecting the lake with Pamlico Sound. Fifty or sixty years ago the lake was, and still is, navigated by canoes. At one time a flat-bottom boat, with mast and sail, carried corn, staves and other produce from one side of the lake to the other, and about 1862 or 1863, an open boat loaded with produce, passed through and out of the lake, through one of the canals, to New Bern.

The infrequency of this sort of navigation is strong evidence that the lake was not a navigable water in the sense of the definition. Just such craft, except as to the sail and mast, pass down the Yadkin river, and it was held in *State* v. *Glenn, supra*, that that was not a navigable stream. A mast and sail do not make a boat *a sea-going vessel*. They may be used upon any kind of vessel, even upon a raft, and are often seen upon canoes and other small craft.

In New York it has been held, that an inland lake, five miles long and three-quarters of a mile wide, which has no important inlet, and does not form a part of a chain of connecting water, is subject to the common rule as to fresh-water streams. *Ledyard* v. *TenEyck*, 36 Barb., 102. And in New Jersey it has been held, that a fresh-water lake three miles long and one mile wide, and of a sufficient depth to float large vessels, but which had no navigable outlet, and had never been navigated by vessels larger than a fishing craft thirty feet long, was private property. *Cobb* v. *Davenport*, 32 N. J., 337. And without going beyond the State for these authorities, the State has recognized and virtually declared the lake to be unnavigable, by grants of parts of the land covered by its water as early as 1795 and 1819, and by the several acts of 1827, 1835 and 1855, prohibiting the entry of the lands covered by the waters of any lake which shall be gained by the recession, draining or diminution of such

waters, and the last act expressly excepts all grants theretofore lawfully made.

The first of the grants referred to, as found by his Honor to have been issued by the State for a part of the bed of this

lake, was a grant to John Hall in 1795, represented on the plat by the lines 19, 7, 20, and the other to Green Hill in 1819, by the lines 1, 2, 3, 4, 5, 6, 7, which covered the whole of the land in dispute. These grants, we must take it, were offered in evidence, and no objection was opposed to their admission. We must therefore assume, for the purpose of this investigation, that they were valid grants. The plaintiff claimed the land represented in the plat by the lines 8, 9, 10, 11, 13, 38, 12, 31, 29, 1, 28, 7, which called for the margin of the lake, which will be seen by reference to the foregoing plat, which accompanies the record and is made a part of the case, and was used as such in the argument of the case before this Court.

The plaintiff did not connect himself with any grants, but his title by possession since 1824, and color of title to the tract of land bordering on the lake, was admitted; and he claimed the land in controversy, designated in the plat by the lines 7, 22, 26, 27, 28, 7, which is caused by the reliction of the water of the lake, and was in the possession of the defendant Williams. The plaintiff had never had any possession of this land, but claimed it as riparian owner by virtue of the recession of the water of the lake.

The question then arises, can he claim the relicted land of the lake shore by such a title? It is well established, that in navigable streams the riparian proprietor owns the land, *usque ad filum aquæ*. *Williams* v. *Buchannan*, 1 Ired., 535; *Ingram v. Threadgill*, 3 Dev., 58. Of course this principle cannot apply, when the bed of the stream had been previously granted. We find no case where this principle has been applied to large bodies of water like this lake, which is fifteen miles long and eight miles wide; and it cannot apply to this lake, because the land in dispute covered by the water of the lake, had been granted by the State prior to any title acquired by the plaintiff to the land bordering upon its shore, as shown by the facts found by his Honor.

If then, the plaintiff by his grant acquired no title to the land in dispute covered by the water of the lake, he could not acquire any to the land relicted by the recession of the water, for that right is derived mainly from the rule that the riparian proprietor is owner of the soil under the water, and by the general law of property, becomes entitled as of right to all accessions. See 9 Cush., 544, and *Ingraham* v. *Wilkinson*, 4 Pick, 268.

To illustrate this principle in its application to unnavigable streams, suppose the State has granted the land in the bed of the stream covered by the water, to A, as we have shown it may do, and afterwards grants the land on each side of the stream to B and C respectively, calling in each grant for the margin of the stream as the boundary, and the river afterwards changes its course, so as to leave the bed of the stream bare, the relicted land would belong to the grantee of the bed of the stream, no matter whether the reliction occurred suddenly or gradually and imperceptibly, for in such a case the riparian proprietors had no right to the land covered by the water, by virtue of the principle of ownership *ad filum aquæ.* The case is analogous. Here the land covered by the water of the lake, had been granted by the State prior to any grant of the plaintiff, and by his grant he acquired title only to the margin of the lake, and none to any of the land of the lake covered by its water. When the land in dispute, then being covered by the water, was reclaimed, the relicted land would belong to the first grantee and not to the plaintiff as riparian owner. This principle, of course, does not apply to lands relicted by the recession of the sea, or other waters technically navigable, for then the principle is well settled, that if the land covered by the water lying adjacent to the shore is relicted by a sudden recession of the water, the land belongs to the sovereign, but if relicted gradually and imperceptibly, it belongs to the riparian proprietor.

But we have shown upon the facts found and the author-
ities to which we have had reference, that this lake is not
navigable water, and our conclusion is, the plaintiff has failed
to make out his title to the land in controversy, and that there
was error in the judgment of the Superior Court.

This opinion will therefore be certified to the Superior
Court of Hyde county, that a *venire de novo* may be awarded.

Error.                                           Reversed.