STATE, on the relation of Blount, Solicitor, v. C. C. SPENCER.

*Oyster Beds—Shell-fish Commissioners—Establishing Public Grounds—Grants by State—Vacation of Grant.*

1. Where a grant has been issued in strict compliance with the law, rights of property have been acquired which cannot be taken away, even by the State, in the absence of an allegation of fraud or mistake, except after compensation and under the principle of eminent domain.

2. The decision of the Board of Shell-fish Commissioners fixing the location of the public grounds under the provisions of ch. 119, Acts of 1887, is final where there was no protest or appeal and in the absence of fraud or mistake; and an entry and grant of a natural oyster bed not included in the boundaries fixed by the Board cannot be vacated on the ground that such bed was not subject to entry.

ACTION, tried at Fall Term, 1893, of HYDE Superior Court, before *Graves, J.,* on complaint and demurrer, which were as follows:

"1. That on the 26th day of June, 1888, Christopher C. Spencer, the above-named defendant, made application to the entry-taker of Hyde county to enter, and did enter, and on the 16th day of May, 1889, in pursuance with said entry and after survey as required by law, obtained a grant from the State of North Carolina for a certain tract of land, or perpetual franchise to cultivate oysters on said land (a copy of said grant is hereto attached as a part hereof, marked "A," and is referred to for all proper purposes), said oyster ground being situated within and covered by the waters of Pamlico Sound, which is a public and navigable stream.

"2. That the aforesaid entry includes a reef or bottom where oysters are found growing naturally, not sparsely or at intervals, but in a mass or stratum in sufficient quantities to be valuable to the public.

"3. That the said entry is within the boundaries of the land and waters described in chapter 119 of the Public Laws of 1887, and within the boundaries of the land surveyed by the Shell-fish Commissioners under and by virtue of said act as being subject to entry, but was not any part of any of the natural oyster beds as marked out by the Shell-fish Commissioners under and by virtue of said act as not subject to entry. (The report of said Commissioners is hereto attached as Exhibit 'B')."

Wherefore plaintiff prays judgment:

"1. That said entry and grant be vacated and set aside.

"2. For cost, and such other relief, etc."

The defendant herein demurred to the complaint as filed by plaintiff and assigned the following grounds for demurrer, to-wit:

"1. That the complaint does not state facts sufficient to constitute a cause of action.

"2. For that it appears upon the face of the complaint

that the lands described in section 1 of the complaint were entered under and by virtue of the Act of 1887, chapter 119, and were not any part of the lands exempt from entry under said act, but were a part of the lands expressly opened for entry and grant thereunder, and under the survey and action of the Shell-fish Commissioners therein appointed."

Wherefore defendant prays judgment:

"1. That the action be dismissed; that defendant go without day, and recover his costs, etc."

The demurrer was sustained, and plaintiff appealed.

The sections of chapter 119 of the Laws of 1887 bearing upon the subject discussed in the opinion are as follows:

"4. The Board of Shell-fish Commissioners shall cause to be made a survey and map of the area hereinbefore described, whereon shall be shown the location and area of all the natural beds and of all the grounds which may have been occupied under authority of previous acts for the growing, planting or cultivation of shell-fish, and upon the completion of the said surveys in and maps of each or any county the Board of Commissioners of Shell-fisheries shall determine the location, area, limits and designation of each and every public ground in the county, and such public grounds are to include the natural beds, together with such additional areas adjacent thereto as may be deemed by the Board of Commissioners as necessary to provide for the natural expansion of the said natural beds; and having decided upon the location, area, limits and designation of the said public grounds, the Board of Commissioners of Shell-fisheries shall publish the same for the period of thirty days at the court-house door and in four other public places in the county wherein the said public grounds are located; and any person or persons objecting to the decision of the Board as published may file a written protest stating the grounds for his or their objections within the said thirty

days with the Clerk of the Superior Court of the county wherein the said publication is made, upon payment to the Clerk of the sum of twenty-five cents, and at the expiration of said thirty days the said Clerk shall forward all such written protests to said Board, and in case such protests are so filed and forwarded the said Commissioners, or a majority of them, shall, upon fifteen days' notice in writing, mailed or personally delivered to all parties in interest, hear and pass upon such protests or objections in the county in which said public grounds are located; and said Board, having fully informed themselves of the facts in the case, shall make, within twenty days from the conclusion of the hearing, a decision which shall be final, and shall be so considered until reversed on appeal to the Superior Court. And at all hearings authorized by this act the said Commissioners may by themselves or their clerk subpœna witnesses and administer oaths as in courts of law."

"Section 5. The Board of Commissioners of Shell-fisheries shall, upon making the said final decision as to the location, limits, area and designation of the several public grounds in the county, publish the same in the county in which said public grounds are located and in two newspapers having a general circulation in the State, and shall announce in the said publication that at the expiration of twenty days from the first day of publication the territory within said county and embraced within the provisions of this act shall be open for entry in manner and form as hereinafter provided; and any person or persons desiring to raise, plant or cultivate shell-fish upon any ground in the county which has not been designated as public ground by said Board may at the expiration of the said period of thirty days make an application in writing, in which shall be stated as nearly as may be the area, limits and location of the ground desired, to the entry-taker of the county in which the said

area for which application is made is situated, for a franchise for the purpose of raising or cultivating shell-fish in said grounds, and said entry-taker having received said application shall proceed as with all other entries as provided in section 2765 of *The Code* as amended, except that the warrant to survey and locate the grounds shall be delivered to the engineer appointed by said Board and not to the County Surveyor; and said engineer shall make such surveys in accordance with the provisions of section 2769 of *The Code*, except that it shall not be necessary to employ chain-bearers nor to administer oaths to assistants nor to make surveys, according to the priority of the application or warrant."

"6. The Secretary of State on receipt of the Auditor's certificate as provided in section 2778 of *The Code* shall grant to the applicant a written instrument conveying a perpetual franchise for the purpose of raising and cultivating shell-fish in and to the grounds ·for which application is made; and said written instrument of conveyence shall be authenticated by the Governor, countersigned by the Secretary of State and recorded in his office. The date of the application for the franchise and a description of the grounds for which such franchise was granted shall be inserted in each instrument, and no grant shall issue except in accordance with a certificate from the engineer of said Commissioners as to the area, limits and location of the grounds in which said franchise is to be granted, and every person obtaining such grant or franchise shall within three months from the receipt of the same record said written instrument in the office of the Register of Deeds for the county wherein said grounds may lie, and shall define the boundaries of said grounds by suitable stakes) buoys, ranges or monuments; but no franchise shall be given in or to any of the public grounds as determined by said Commissioners, and all

franchises granted under this or previous acts shall be and remain in the grantee, his heirs and legal representatives; provided, that the holder or holders shall make in good faith within five years from the day of obtaining said franchise an actual effort to raise and cultivate shell-fish on said ground; and provided further, that the area hereinbefore described lying within two statute miles of the main-land or any island shall be entered or held only by residents of the State of North Carolina, and no grant shall be made to any one person of more than ten acres of said territory, and no person shall hold more than ten acres in any creek unless the same shall be acquired through devise, inheritance, or marriage. And all that territory within the provisions of this act and lying more than two miles from the main-land or any island shall be subject to entry by any person; but no person shall be permitted to enter in any one period of five years more than six hundred and forty acres."

*The Attorney General*, for the plaintiff (appellant).
*Messrs. W. B. Rodman* and *J. H. Small*, for defendant.

MacRae, J. (after stating the facts): The entry made by the defendant covered a natural oyster bed, according to the definition given by this Court in *State* v. *Willis*, 104 N. C., 764, and subsequently adopted by statute—section 1, ch. 287, Acts 1893.

Only one question is presented by this appeal: Whether the action of the Board of Commissioners of Shell-fisheries, under ch. 119, Laws 1887, in laying off and establishing the locations of the public grounds of Hyde county, when there was no protest and appeal from their action in the premises, was a final decision, binding both the State and the party making an entry and receiving a grant under its

provisions; or, may the entry and grant of a natural oyster bed not included in the boundaries fixed by said Board be now vacated and set aside upon the ground that the same is not subject to entry under the laws of North Carolina?

It seems to have been the policy of the Legislature for many years to encourage the cultivation of oysters and other shell-fish by private parties, and at the same time to preserve for the public use those natural beds where oysters were found in sufficient quantities to be of value to the public. A reference to some of the statutes upon the subject may be found in the opinion in the case above cited. At each session of the General Assembly since that of 1887 material changes have been made in the law upon this subject, but it will only be necessary to refer to one of these subsequent statutes, because, whatever rights the defendant may have in the franchise conveyed to him by the grant in question vest in him by virtue of said Act of 1887, and cannot be divested by subsequent legislation; therefore, the fact that this action is instituted under the provisions of the Act of 1893, ch. 287, section 4, gives it no additional strength.

It will be seen by reference to ch. 119, Laws 1887 (the 4th, 5th and 6th sections above set out in the statement of the case) that by said act an elaborate system was adopted for the furtherance of the objects in view, the encouragement of the culture of oysters, and also the preservation of the rights of the public in the use of the natural beds. A Board of Commissioners was appointed with clearly defined duties to have surveyed and mapped a certain area in which was included that part of Pamlico Sound which was within the jurisdiction of the county of Hyde, "whereon shall be shown the location and area of all the natural oyster beds, and of all the grounds which may have been occupied under the authority of previous acts

for the growing, etc., of shell-fish; and upon the completion of said surveys in and maps of each or any county the Board of Commissioners of Shell-fishery shall *determine* the location, area, limits and designation of each and every public ground in the county, and such public grounds are to include the natural beds," etc.

It was further provided that persons dissatisfied with the action of the Board might file a protest with the Board, have a hearing after notice to all parties in interest, and that after such hearing the decision of the Board should be final until reversed on appeal to the Superior Court.

The final decision of the Board was to be published, and entries might be made of any ground which had not been designated as public ground, and after payment therefor grants were to issue, to the enterer, of a perpetual franchise to cultivate oysters within a certain limit and upon a certain condition. We are given to understand in the case before us that all the provisions of the law have been complied with, unless it be that the Board of Commissioners has failed to have all the natural beds included within the boundaries determined by said Board to be the public grounds of said county.

There is no question but that the locality of the grant was upon the land covered by the waters of Pamlico Sound, which is navigable water, and that the same was not subject to grant under the general laws regarding entries and grants, and became so subject in a qualified sense by virtue of the Act of 1887.

It will be conceded, also, that there was no stretching of the power of the Legislature in delegating to a Board of Commissioners the authority to designate what portions of the public domain not free to entry already should be opened to entry for the special purposes designated.

Acts of this kind are not infrequent, and the authority

of such boards has not been seriously questioned, as far as we have been informed. Instances may be found of precedents in the appointment of commissioners from time to time to have surveyed and opened to sale and grant the lands in Western North Carolina acquired by treaty from the Cherokee Indians, which acts are set out in the Revised Statutes of 1836; or the appointment of commissioners under Act of Congress of March 3, 1877, in regard to the Hot Springs reservation in Arkansas, whose duties were to designate a portion of said tract to be still reserved, and to have the remaining portion surveyed off into lots, and to finally determine the rights of claimants and occupants to purchase the same. In the case of *Rector* v. *Gibbon*, 111 U. S., 276, it was held, there being no provision for an appeal from the decision of the commissioners, that their action was subject to review in the Courts. In our case, however, full provision was made for the review of the action of the Board of Commissioners, and, in case of no such review being sought and had, its decision was declared final.

A grant or patent may be vacated at the instance of a private person under section 2786 of *The Code*, and in an action brought by the Attorney General to vacate the same under section 2788. But these actions must be founded upon a charge of fraud or mistake.

The present action is brought under the provisions of the Act of 1893, ch. 287, sec. 4, which is as follows:

"4. That it shall be the duty of the Solicitor of the judicial district in which any county is situated, wherein there is any license, entry or grant or any oyster or clam bed, upon an affidavit being filed with him, sworn to and subscribed by five inhabitants of such county, stating that such license, entry or grant includes a natural oyster or clam bed, forthwith to institute an action in the Superior

Court of such county in the name of the State of North Carolina upon the relation of such Solicitor to vacate and amend such license, entry or grant, and to prosecute the same to judgment."

It appears, then, that a tribunal was established for the purpose of designating such portion of the lands, not theretofore subject to entry, and covered by the waters of Pamlico Sound and other waters, as were natural oyster beds, and to declare them public grounds, and that such other portions of said territory in the county of Hyde and certain other counties as was not included in said public grounds shall be open to entry for certain purposes and under certain restrictions, that a mode of review upon appeal from the final decision of said Board was provided in the act, and their decision in the absence of any reversal by the Courts declared final after a certain time; that the Legislature had power to make such provision, and that in the absence of fraud or mistake in the procurement or issue of the grant it must be binding upon the parties thereto. "If the terms of the grant are doubtful that construction will be adopted which least restricts the rights of the State and of the public, inasmuch as public grants, whether made by the Crown or by Congress or by a State, are construed strictly and pass only what appears by express words or necessary implication." Gould on Waters, p. 88.

But fraud is never presumed; when the State comes into its Courts seeking their aid in annulling a contract it is governed in general by the same rules as the citizen. It has provided its own tribunal with full powers and a system by which its decisions may be reviewed. These laws are binding upon us. Aware, as we are, of the importance of preserving these public grounds for the common benefit, we are not permitted to provide another way when the Legislature has marked out the course to be pursued by those who have been injured by the action of commissioners.

.In the absence of any allegation of fraud or mistake in the complaint there was no cause of action stated. If grants have been issued under the provisions of and in strict accord with the law rights of property have been acquired which the State itself cannot take away except after compensation and under the principle of eminent domain.

His Honor could not have done otherwise than to sustain the demurrer.                    Affirmed.