There was evidence on the part of the (604) State tending to show that the waterway in question leads off from Currituck Sound and is about four hundred yards wide and six feet ten inches deep in the channel at its mouth, and the following widths at these distances from its *Page 439 
mouth: Five hundred yards wide, one mile; four hundred yards wide, a mile and a half, and sixty yards at Shipyard, about two miles above; that the obstructions were placed in the stream at a point three hundred and fifty yards from the mouth of the creek. At this point Jean Guide Creek is about three hundred and fifty yards wide, and boats drawing five or six feet of water could sail up to the point where the obstructions were placed and a mile and a half above the mouth of the stream. The watercourse in question has been used by the public for thirty-five years "for fishing and harboring and as a passway and for landing purposes" and "as an harbor for protection in time of storms," and "as a thoroughfare by the public as long as the witness could remember, and by persons coming in from the sound who would go up to the head of the creek at Shipyard, leave their boats and then go by land, and has seen boats carrying freight land at the pier." Barges drawing three and a half feet of water and transporting timber can go to Shipyard, turn and come out. This witness also testified that he had seen a sloop two hundred yards above the point at which the obstructions were placed.
There was also evidence tending to show that the land covered by the waters of Jean Guide Creek is claimed by Hannah M. Lyons, of New Jersey, who acquired her alleged title through mesne conveyances from a grant from the State of North Carolina to one Hodges Gallop, dated 30 May, 1872. It also appeared that land on both sides of the creek belongs to Hannah M. Lyons and that no public road leads from the creek, but only a private road for the use of the owner and her tenants. The defendants, Twiford and Tate, admitted that they, by the orders of said riparian owner, (605) placed the obstructions in the creek in October, 1902. The stakes constituting the obstructions are strongly driven down and their tops rise three or four feet above the surface of the water. They are two and a half feet apart. There is a gate near the center of the stream used exclusively by the owner, which is kept locked so as to prevent the general public from using the waterway.
The defendants excepted to the refusal of the Court to charge: 1. That if the jury believed the evidence the creek is not navigable, and to find the defendants not guilty. 2. That as the obstructions were placed by the defendants under orders "of the owner of the land on both sides of the creek and title to the stream belongs also to her, to return a verdict of not guilty." 3 and 4. That as the creek leads from the sound to the land of the employer of the defendants and not to any *Page 440 
public place, and there is no public road adjoining or touching the creek, and any one landing at any point on the creek must go over the land of said riparian owner, to find the defendants not guilty. 5. That if the evidence is believed, the creek is not navigable and is owned by Hannah M. Lyons and she had a right to place the posts in the creek, and the defendants acting under her orders were not guilty.
The Court charged the jury, among other things: "If this stream or bay is properly described and generally known as Jean Guide Creek, and is wide enough and deep enough for navigation by boats ordinarily used for carrying traffic and commerce on the sound waters and was required and used for such purposes by the necessities and conveniences of persons generally engaged in such traffic, it would be an indictable nuisance to obstruct it; and if the jury are satisfied beyond a reasonable doubt it was that character of stream so used and required by (606) public convenience and that defendants put the obstructions in the stream, the defendants would be guilty and you should so return your verdict." Defendants excepted. "If the stream is not navigable by vessels of the kind described or if the stream was so shut in or is so situated that it was not used or required for traffic or commerce by the convenience of the public or persons generally engaged in traffic with vessels on the sound, then it would be no nuisance to obstruct it or shut it up and the jury should acquit the defendants." The defendants again excepted. The question was submitted to the jury as one of fact under the above instructions. The rest of the charge, which fully set out the contentions of the parties and the law, was not excepted to. These are the only exceptions and we find no error as against the defendants.
If a stream is "navigable in fact (as the jury found under the above instructions) it is navigable in law." Gould on Waters (3 Ed.), sec. 67. The capability of being used for purposes of trade and travel in the usual and ordinary modes is the test and not the extent and manner of such use.S. v. Eason, 114 N.C. 787, 23 L.R.A., 520, 41 Am. St., 811; Hodges v.Williams, 95 N.C. 331, 59 Am. Rep., 242; Ingram v. Threadgill 14 N.C. 59;Wilson v. Forbis, 13 N.C. 30. The same ruling is maintained in the United States Supreme Court, The Daniel Ball, 77 U.S. 557; The Montello,78 U.S. 411; S.C., 87 U.S. 430.
Navigability is a question of fact dependent upon the depth of water and other circumstances and was properly submitted to the jury in the charge. Navigability cannot be affected by *Page 441 
the condition on the adjacent land, such as there being a large town on the shore with numerous streets and wharves, or whether, as here, one riparian owner has a monopoly of the land, with no public road to the water, thus cutting off access by land. It is the navigability of the water that is the test, its accessibility by water and not accessibility by (607) land — else whether bays, estuaries, creeks and rivers are publici juris would depend upon whether or not riparian owners have monopolized the ownership of the adjacent soil.
Land covered by navigable waters was not subject to entry at the date of the grant to Gallop, and is not now, and the grant of the land covered by Jean Guide Creek is void. Bat. Rev., chap. 41, sec. 1 (1); The Code, sec. 2751 (1); Skinner v. Hettrick, 73 N.C. 53; Blount v. Spencer, 114 N.C. 777;Bond v. Wool, 107 N.C. 139; Wool v. Edenton, 115 N.C. 10; Holleyv. Smith, 130 N.C. 85. Even if the grant passed a title to the land covered by the waters of the creek, the title became vested in the owner subject to the public easement — the right of navigation. Brodnax v.Baker, 94 N.C. 675, 55 Am. Rep., 633; Hodges v. Williams, 95 N.C. 331, 59 Am. Rep., 242; Gould on Waters (3 Ed.), sec. 87.
The above test, the capacity for navigation, is laid down in S. v. Club,100 N.C. 477, 6 Am. St., 618, as follows: "Navigable waters are natural highways — so recognized by government and the people — and hence it seems to be accepted as part of the common law of this country, arising out of public necessity, convenience and common consent, that the public have the right to use rivers, lakes, sounds and parts of them, though not strictly public waters, if they be navigable in fact, for the purposes of a highway and navigation, employed in travel, trade or commerce. Such waters are treated as publici juris in so far as they may be properly used for such purposes in their natural state."
Mr. Justice DOUGLAS in a more recent case, S. v. Baum,128 N.C. 600, says that in early days "the navigability of a stream depended more upon the temper of those living along its banks (Indians) than upon its natural features, * * * but that now the public have the right to the unobstructed (608) navigation as a public highway for all purposes of pleasure or profit of all watercourses, whether tidal or inland, that are in their natural conditions capable of such use. The navigability of a watercourse is therefore largely a question of fact for the jury and its best test is the extent to which it has been so used by the public when unrestrained."
The evidence tends to show that Jean Guide Creek has been *Page 442 
used by the public for thirty-five years for the purposes of fishing, as a passway and as an harbor for protection in time of storms. "These conditions constitute ample evidence of a navigable stream." S. v. Baum,supra. The defendants' contention that to make a waterway, it must have a public termination, cannot be sustained. That may come later, but that will not make the stream deeper or more navigable when it comes. This stream is an arm or part of Currituck Sound, from which sound there is a passage way through the waters of Albemarle and Pamlico Sounds and up various rivers to many towns in the State. If above evidence is true, the stream is in itself navigable in fact, and its navigation is certainly "in some degree required by the necessity or convenience of the public." The right to anchor is essential in navigation, and Jean Guide Creek, according to the evidence in the case, has been used "as an harbor of protection in time of storms." In Gould on Waters (3 Ed.), sec. 95, it is said: "The right of navigation includes the right to anchor as incidental to its beneficial enjoyment."
The whole matter is thus summed up by Shaw, C. J., inAttorney-General v. Woods, 108 Mass. 436, 11 Am. Rep., 380: "If water is navigable for pleasure boating it must be regarded as navigable water, though no craft has ever been put upon it for the purpose of trade or agriculture. The purpose of navigation is not the subject of inquiry, but the fact of the (609) capacity of the water for use in navigation." It would be a serious detriment to the public if water, capable of such usefulness as here, can be made private property by buying up the adjacent land. The control of such water belongs to the public and is not appurtenant to the ownership of the shore. It is not a case "where the tail goes with the hide."
Nor is it material that the former riparian owner charged people one-fourth of the catch for fishing in the creek and that some in their ignorance submitted to the exaction. This no more proves ownership of a navigable stream than the exaction of toll by feudal barons on the Rhine proves ownership of that great artery of commerce to-day by those who have succeeded them in the ownership of the lands on which their castles once stood. Navigable waters are free. They cannot be sold or monopolized. They can belong to no one but the public and are reserved for free and unrestricted use by the public for all time. Whatever monopoly may obtain on land, the waters are unbridled yet.
No Error. *Page 443 
(610)