STATE OF NORTH CAROLINA, EX REL. GRACE H. ROHRER, SECRETARY OF THE
    NORTH CAROLINA DEPARTMENT OF ADMINISTRATION v. SIDNEY ARTHUR
    CREDLE

No. 862SC1017

(Filed 18 August 1987)

1. **Waters and Watercourses § 6— taking oysters in navigable waters—no pre-scriptive use**

    The exclusive right to take oysters from lands under navigable waters in
    this State cannot be acquired by prescriptive use.

2. **Deeds § 14.3; Waters and Watercourses § 6— claim of exclusive right to take oysters in navigable waters—no reliance on common law right of piscary—profit a prendre—no exclusive right**

    In claiming to have acquired the exclusive right to take oysters from cer-
    tain of the State's submerged lands, defendant could not rely on the common
    law right of piscary, which is the right to fish in another man's waters, since
    the right is a type of *profit a prendre* which will not support a claim of *ex-
    clusive* right because: (1) the grant of a *profit a prendre* does not preclude the
    grantor from exercising a like right upon the land or granting such right to
    others also, and (2) exclusive fishing rights in *any* waters can only be acquired
    either by a grant of the soil under the water in which the fishing is done, or by
    a grant of the fishing distinct from the soil, and neither grant was ever made
    to defendant or his predecessor in title.

APPEAL by defendant from *Watts, Brown, Frank R.*, and
*Small, Judges*. Orders and judgment entered 25 October 1984, 3
May 1985 and 5 May 1986 in Superior Court, HYDE County. Heard
in the Court of Appeals 10 February 1987.

*Attorney General Thornburg, by Special Deputy Attorney
General Daniel F. McLawhorn and Assistant Attorney General
J. Allen Jernigan, for plaintiff appellee.*

*Davis & Davis, by Geo. Thomas Davis, Jr., for defendant ap-
pellant.*

PHILLIPS, Judge.

Plaintiff sued to remove a cloud on its title to a certain 640-acre tract of Hyde County land, most of which is situated beneath the waters of Swan Quarter Bay, a navigable body of water. *State ex rel. Blount v. Spencer*, 114 N.C. 770, 19 S.E. 93 (1894). Defendant, a 72-year-old fisherman, has taken oysters from that part of Swan Quarter Bay most of his life, as did his father before him. In his answer defendant asserted that he owns the land, either by grant or adverse possession, and in any event owns the exclusive right to take oysters from it by prescriptive use. Information developed during discovery indicated that defendant's claims of ownership or right were based upon the following: (a) two deeds to his father, one by S. S. Mann, the other by Zeb Hayes, that purported to convey portions of a 640-acre grant the State made to Joseph Hancock in 1786; (b) a perpetual franchise to take oysters from 10 described acres that the State granted to J. W. Hayes in 1889; (c) an entry filed in 1891 by S. S. Mann for a perpetual franchise to cultivate shellfish in 640 described acres; and (d) the claim that he and his father possessed the land and had been taking oysters from it under a claim of right continuously since 1917. Eventually, on one ground or another, the State moved to dismiss each of defendant's claims or defenses and after several different hearings were held all the claims or defenses were dismissed. On 25 October 1984, because of defendant's failure or inability to comply with discovery, Judge Watts struck or dismissed defendant's claim to own the land involved based on the State's grant to Joseph Hancock in 1786. On 3 May 1985 Judge Brown, by an order of partial summary judgment, dismissed the claims that defendant owned the land by adverse possession and had the exclusive right by prescriptive use to take oysters from it; the latter claim was dismissed not because of any supposed insufficiency in the evidence, but upon the express ground that the exclusive right to take oysters from the State's submerged lands cannot be acquired by prescriptive use. And on 5 May 1986, by final judgment, Judge Small held that defendant's evidentiary forecast was insufficient either to rebut the presumption established by G.S. 146-79 that the State has title to the lands in controversy or to establish a chain of title to any perpetual shellfish franchise the State ever granted for the lands and waters involved.

[1]  Though defendant appealed from all the orders or judgments entered, he has expressly abandoned all his assignments of error except those relating to the claim that he has acquired by prescriptive use the exclusive right to take shellfish from the submerged lands involved. Thus, it has become the law of the case, *Gower v. Aetna Insurance Co.*, 281 N.C. 577, 189 S.E. 2d 165 (1972), that defendant does not own the lands in controversy, either by grant or adverse possession, and has no exclusive franchise to take shellfish from them; and the only question presented for our determination, therefore, is — Can the exclusive right to take oysters from lands under navigable waters in this State be acquired by prescriptive use? We hold that it cannot and affirm the orders and judgment appealed from. For it has been the announced law in this State almost from its inception that: Lands under navigable waters can neither be appropriated by private persons nor conveyed to them by the State except for a public purpose when authorized by statute; and that such lands and the waters above them are held in trust for the use and benefit of all our people, each of whom, subject to reasonable legislative regulation in the public interest, has a right to navigate, fish, and carry on commerce in such waters as he sees fit. *Ward v. Willis*, 51 N.C. 183 (1858). In keeping therewith, grants of such lands not so authorized have been adjudged not to convey title, but only an easement, *Shepard's Point Land Co. v. Atlantic Hotel*, 132 N.C. 517, 44 S.E. 39 (1903), and it has been held that there can be no exclusive right to fish in navigable streams. *Skinner v. Hettrick*, 73 N.C. 53 (1875). The general common law rule in this country as to taking oysters is in the same vein and is that "no right in natural oyster beds can be gained by prescription against the state." Gould, A Treatise on the Law of Waters, Third Edition, p. 49 (1900).

[2]  The legal vehicle or theory that defendant relies upon in claiming to have acquired the exclusive right to take oysters from the State's submerged lands is the common law right of piscary, which is the right to fish in another man's waters. Webster's Real Estate Law in North Carolina, Sec. 309, p. 373 (1971). The right of piscary (like the right to hunt, dig sand, and pasture cattle) is a type of *profit a prendre* or "right of common" that one person can have in the soil of another under certain circumstances. Black's Law Dictionary 1376 (rev. 4th ed. 1968). But while the theory is

interesting, and ingeniously argued by defendant, it does not support a claim of *exclusive* right for two reasons: First, *profits a prendre* are not exclusive to the holder for "the grant of a *profit a prendre* does not preclude the grantor from exercising a like right upon the land or granting such right to others also." *Builders Supplies Co. v. Gainey*, 282 N.C. 261, 267, 192 S.E. 2d 449, 453 (1972); *Council v. Sanderlin*, 183 N.C. 254, 111 S.E. 265 (1922). Second, in *Collins v. Benbury*, 25 N.C. 277 (1842) it was ruled that exclusive fishing rights in *any* waters can only be acquired either by a grant of the soil under the water in which the fishing is done, or by a grant of the fishing distinct from the soil, and it is the law of the case that neither grant was ever made to defendant or his predecessor in title.

Affirmed.

Judges BECTON and JOHNSON concur.