FABE, Chief Justice,
dissenting.
I continue to hold the view, expressed in my dissent in the first appeal in this case, that the "hopelessly deficient" lease between Ramirez and Cosmos "cannot possibly sustain ... [the] highly restrictive, multi-decade arrangement" that the court today enforces.[1] For the reasons explained in my first dissent and below, I would hold that the lease's silence on exclusivity is sufficient to render the lease non-exclusive as a matter of law.[2] AAA's obligation to pay royalties to Totaro ended when it purchased the property and began gravel mining as the owner; therefore, the superior court's decision holding AAA liable to Totaro should be reversed.
As the court itself noted in the first appeal, "[elontract interpretation generally is a question of law"[3] and involves fact-finding only when "when facially ambiguous contract language read in the context of all relevant extrinsic evidence remains ambiguous." [4] Because the plain language of the lease is not facially ambiguous on the issue of exclusivity, it was unnecessary to remand to the superior court for fact-finding on the parties' subjective intent. Despite recognizing our long-held standard on contract interpretation, the court in its earlier decision strained to intro *534 duce ambiguity into the lease's silence on exclusivity, couching its conclusion in equivocal terms: "The Ramirez/Cosmos lease does not mention exclusivity, but even though silent, some of its provisions may make sense only if the lease had been intended to be exclusive."[5] It was inappropriate for the court to augment the lease's plain language to "create ambiguity regarding the existence of such a crucially important restriction in a lease that is otherwise completely silent on the matter."[6] Because ambiguity in a contract generally does not arise from silence,[7] especially with regard to a provision as important as exclusivity, I conclude that the lease between Ramirez and Cosmos was not exclusive. As I noted in my earlier dissent, "[just as Ramirez had the right to mine the gravel pit as fee simple owner, unencumbered by the lease with Cosmos, so too did AAA enjoy the full panoply of ownership rights after the sale. When AAA secured the right to mine the pit as its owner, its obligation to pay royalties to Totaro as a sublessee ended." [8]
But the court goes further than it did in the first decision, reaching an issue today that was neither raised nor briefed by the parties. The court characterizes the gravel lease as a type of easement, specifically a profit. But characterizing the lease as a profit does not remove the need for an express grant of exclusivity. Profits may be exclusive or nonexclusive, and "[the degree of exclusivity of the rights conferred by an easement or profit is highly variable."[9] The court claims that a "profit holder generally has the right to exclude others." [10] But the court fails to point to any case in which a court has held that profits are presumptively exclusive. The court's sole source of authority is a general statement from a treatise that "[a profit a prendre] creates a commercial, rather than a personal, relationship between the parties and is presumptively assignable, inheritable, and exclusive." [11] But the only cases relied on by that treatise in support of its statement involve express grants of exclusivity.[12] Indeed, other courts have held that as a general matter, "profits [A] prendres are not exclusive to the holder for 'the grant of a profit [¥] prendre does not preclude the grantor from exercising a like right upon the land or granting such right to others *535 also.'" [13] Of course, parties can contract for an exclusive profit, but as with other contracts, courts have rightly required clear statements of exclusivity: "A profit & pren-dre is a right to take something off another person's land; such a right does not prevent the owner from taking the same sort of thing from off his own land; the first right may limit, but does not exclude the second. An exclusive right to all the profit of a particular kind can no doubt be granted; but such a right cannot be inferred from the language when it is not clear and explicit." [14]
Because the characterization of the lease as an easement has never been litigated by the parties, AAA and Ramirez also have not had the opportunity to argue that any exclusive servitude that may have been created by the lease must be limited to a reasonable duration: "Servitudes may be interpreted to include a reasonable durational limit ... when the time limit lessens the chances that the servitude will operate as an unreasonable restraint on alienation or otherwise violate public policy."[15] Even if the lease could support the interpretation that it granted an exclusive profit, the reasonableness of the duration of exclusivity of such a profit was not raised by the parties or addressed by the superior court. And if the lease did in fact grant an exclusive profit to Cosmos, then the existence of such a servitude would certainly violate the warranty deed conveyed by Ramirez as the court itself acknowledged in the first appeal: "by conveying with a warranty deed it was Ramirez, not AAA, who 'decided that it was best to proceed and to run the risk' that the Ramirez/Cosmos lease would have continued legal viability and be an encumbrance against title to the property." [16]
For these reasons, I respectfully dissent.

. AAA Valley Gravel, Inc. v. Totaro, 219 P.3d 153, 168 (Alaska 2009) (Fabe, C.J., concurring in part and dissenting in part).

. Id. at 169-70 ("Ambiguity in a contract does not arise from silence. And unambiguous contract language is not rendered ambiguous simply because the parties disagree on their intent at the time of contracting, because they advance different interpretations during the course of litigation, or because the clear meaning of the language used would work a hardship on one of the parties. By omitting any mention of exclusivity, Ramirez retained a concurrent right to mine the gravel on his property.") (internal citations omitted).

. Id. at 160 (per curiam) (citing Norville v. Carr-Gottstein Foods Co., 84 P.3d 996, 1004 (Alaska 2004).

. Id. at 161 (citing Little Susitna Constr. v. Soil Processing, Inc., 944 P.2d 20, 23 (Alaska 1997)).

. Id. at 160 (emphasis added) (footnote omitted).

. Id. at 169 (Fabe, C.J., concurring in part and dissenting in part).

. See Nissho Iwai Europe PLC v. Korea First Bank, 99 N.Y.2d 115, 752 N.Y.S.2d 259, 782 N.E.2d 55, 60 (2002) ("[A)s with all written agreements ... ambiguity does not arise from silence, but from 'what was written so blindly and imperfectly that its meaning is doubtful.'" (citation omitted)); Consol. Bearings Co. v. Ehret-Krohn Corp., 913 F.2d 1224, 1233 (7th Cir.1990) ("Silence creates ambiguity ... only when the silence involves a matter naturally within the scope of the contract as written. A contract is not ambiguous merely because it fails to address some contingency; the general presumption is that 'the rights of the parties are limited to the terms expressed' in the contract." (citation omitted)).

. AAA Valley Gravel, 219 P.3d at 170 (Fabe, C.J., concurring in part and dissenting in part).

. Resratement (Tip) or Property: Servitupss § 1.2 emt. c (2000).

. Op. at 532.

. 3 Rocky Mountain Mineral Law Found., Am. Law or Mminc § 82-03[3], at 82-14 (2d ed.2013).

. Id. (citing Gerhard v. Stephens, 68 Cal.2d 864, 69 Cal.Rptr. 612, 442 P.2d 692 (1968); Bonner v. Okla. Rock Corp., 863 P.2d 1176 (Okla.1993) (other citations omitted)). The conveyance in Gerhard was explicit on exclusivity, conveying "all petroleum, coal oil, naptha, asphalt, maltha, brea, bitumen, natural gas and other kindred or similar substances and deposits and rocks, gravels or other formations containing or yielding any of said substances," and these rights were "transferred to the corporation, its successors and assigns forever." 69 Cal.Rptr. 612, 442 P.2d at 732 n. 4 (emphases added). Similarly, the easement in Bonner read: "It is the intent and purpose of this instrument to give the Grantee, its successors and assigns, a perpetual and exclusive right to go upon the property to test, mine, quarry and remove such gravel, stone, rock, shale, and limestone and to process the same thereon." 863 P.2d at 1179 n. 10.
These clear statements on exclusivity and duration stand in stark contrast to the vague and equivocal language in the Ramirez/Cosmos lease, and Gerhard and Bonner provide scant support for the court's claim that profits are "generally" exclusive, especially where a lease is silent on the matter.

. State ex rel. Rohrer v. Credle, 86 N.C.App. 633, 359 S.E.2d 45, 47 (1987) af'fd, 322 N.C. 522, 369 S.E.2d 825 (1988) (emphasis added) (italics removed) (quoting Builders Supplies Co. of Goldsboro, N.C., Inc. v. Gainey, 282 N.C. 261, 192 S.E.2d 449, 453 (1972)).

. Stanton v. T.L. Herbert & Sons, 141 Tenn. 440, 211 S.W. 353, 354 (1919) (citation omitted).

. Restatement (Tero) or Property: Servitupss § 4.3 Reporter's N. (2000).

. AAA Valley Gravel, 219 P.3d at 163.