*281
 
 Ruffin, C. J.
 

 The case does not state explicitly that Albemarle Sound is or is not a navigable water, in its technical sense, nor any facts from which the court can see that it is, to all practical purposes, navigable, as the term is un-destood among us, at least, in common parlance. But it is apparent that the Sound was assumed upon the trial to be navigable, if not strictly speaking, at least within the meaning of the entry laws of 1765 and
 
 1777.
 
 For the learned Judge instructed the jury, that as the State had never granted the beds of navigable streams, Benbury had no title to the Sound, which was not the subject of grant;. and-,, therefore, that his lease to Collins- conveyed the fishing beach only. But to that was added the further instruction that “ as incident to that,” namely, the beach — “the several right of fishing in the waters of the Sound, opposite his shore,” was also conveyed ; and thus his Honor proceeded to- designate the lines within which this several right of fishing, incident to the riparian ownership, must be exercised by the proprietors of adjoining parcels of the shore. The case seems chiefly to have turned, in the diseussion below, on this latter point. But it will not be material to consider that subject here, with the view of ascertaining the extent to which the several fishery of these parties respectively goes, if neither party has such several right; and such is the opinion of the court. The co rrectness of this opinion depends upon the enquiry, whether Albemarle Sound is to be regarded by us as being a navigable water and public highway or not; for if it be, it seems to be well established upon authority, that there can be no exclusive and several right of fishery in if, more than in the Ocean.
 

 It is to be regretted, perhaps, that the date is not given of the patent by which the land was granted, of which this fishing beach is a part; and that there was no evidence offered as to the period, at which- the regular ebb and flow of the tide in the Sound ceased, in consequence of the closing of Roanoke Inlet. As the lands on the Albemarle were amongst the earliest taken up after the settlement of the Colony, it is extremely probable, that, at the emanation of the
 
 *282
 
 patent, there was a flux and reflux of the tide from the Ocean high up as the land in question ; and if so, it seems agreed by all, that, at common law, the proprietors of the land adjacent have no propriety of soil in the land covered by the water or fishery, as a several right. But whether there was any tide or not in the Sound, when this patent issued, we do not think material; for we concur in the opinion of his Hon- or, that this is “a navigable water,” in the sense of our statutes. In
 
 Wilson v
 
 Forbes, 2 Dev. 30, it was held, that a stream, comparatively short, narrow and shallow, was a navigable water course for the purpose of rendering the water’s edge the line of a tract bounded on the creek, and not the thread of the channel. Judge- Hendeeson, in commenting on the English rule, pronounced it entirely inapplicable to our situation, and by way of exemplifying the absurdity of applying it as the rule of construction for our statutes, he remarked- that,.“by that rule, Albemarle and Pamlico Sounds, which are inland seas, would not be deemed navigable waters, and would be the subject of private property.” He certainly could not, by direct affirmation more forcibly have stated-his opinion,, that they were to be deemed1 in our law navigable waters, as bounding the grants of land lying on them. If this vast body of water, actually navigated throughout by sea vessels of a large class, be not a navigable water,, it is difficult- to conceive to what waters those terms were intended by the Legislature to apply, though used twice in the act of 1765-and in-that of 1777; for there are but a few miles near the months of some few of our rivers, among the w-hole of them, in which there is a regular tide from the Ocean. The Legislature must be supposed to have used them in- reference to the nature and actual state of our own streams, riveisand sounds, rather than in the sense of the common law, which would render them inapplicable to our condition. And it would seem, therefore, to be the fair construction of the acts, that any waters, which are sufficient in fact to afford a common passage for all people in sea vessels,, are to be taken as navigable, and in that sense the act has commonly been received. If so, the statutes direct that the water shall form
 
 one
 
 side of the
 
 survey,
 
 
 *283
 
 and that the lines shall run from the water landward. The result of this construction is, that the patent could coyer only the land to the water’s edge, and did not pass the soil, nor, as we think, any sole or exclusive right of fishing in the waters of the Sound. It was laid down by his Honor» that neither the soil nor the water of the Sound was included in the patent, but only the land up to the water. Yet he held, that the right of a several fishery was acquired as incident to the grant of the land adjacent to the Sound ; and it is in that part of his opinion that we cannot go along with him. The grounds of the difference we will now proceed to state.
 

 We think a several fishery can only be acquired by a grant of the soil covered by the water in which the fishing is done, or by a grant, from the owner of the soil, of the fishery distinct from the soil. Mr. Blackstone, indeed, lays it down, that the ownership of the soil is essential to a several fishery. 2 Bl. Com. 39. In that, however, he differs from Lord Coke, who says, Co. Lit. 4, b., that if a man be seised of a river, and by deed do grant
 
 separatum piscar turn
 
 in the same, and maketh delivery of seisin
 
 secundum formam char-lee,
 
 the soil doth not pass, but only a particular right, that is, of fishing. And afterwards, Co. Lit. 122 a., he says, a man may prescribe to have a several fishery in such a water, and the owner of the soil shall not fish there. It seems to be yet an unsettled point, which of those great authorities is
 
 right
 
 —Seymour
 
 v Courtenay,
 
 5 Bur. 2814;
 
 Hinnarsby
 
 v
 
 Orpe,
 
 Doug. 56 — though the learned annotator, Mr. Har-grave, maintains Lord Coke’s position with apparently good reason. If Mr. Blackstone be right, then the plaintiff here, not being owner of the soil, cannot be entitled to the fishery. But if Lord Coke is to be followed, we do not see that the plaintiff is better off. All he holds, is, that the rights of fishery and soil are not so absolutely united, that the owner of both cannot grant the fishery without the land. But it plainly follows from what he does say, that the fishery can be acquired only by a grant from the owner of the soil or from the sovereign ; for a prescription supposes a grant original-.
 
 *284
 
 ty, though it cannot now be shewn. But here is no such grant shewn, nor prescription, nor use on which a presumption of a grant may rest. On the contrary, there can be no doubt, that no right of soil in the land covered by the Sound ever did exist in any private person, who could convey the right ol fishery; for it has at all times been unlawful to take out such a grant. We do not doubt, that the right of fishing in navigable streams, cither as a common or several right, is a proper subject of legislative regulation, and may be granted to the proprietors of adjoining land, or to others, upon such terms as may seem meet to the General Assembly. There are many acts of the kind, such as those regulating lay days, and the like. But there has been no such grant of a several fishery in the Albemarle Sound to the plaintiff, or to any one from whom he could have derived it. Being a navigable water, a several fishery in it does not arise as an incident to riparian ownership., for in sueh waters the right of fishery is
 
 “ prima facie
 
 in the King, and is public.” It is only in rivers not navigable or little streams, that, as an
 
 incident
 
 to the ownership.of the soil adjacent, the right of soil in the stream and of the several fishery therein, is acquired.
 
 Seymour
 
 v
 
 Courtenay,
 
 5 Bur. 214.
 
 Carter v Murcot,
 
 4 Bur. 2162. Thomas’Coke, 231, note. And Lord Hale mentions,
 
 De jure mavis,
 
 5, “ that fresh rivers do, of common right, belong to the owners of the soil adjacent, so that the owners of one side have, of common right,
 
 the propriety of the soil,
 
 and,
 
 consequently,
 
 the right of fishing
 
 usque ad fi-lum
 
 aquae, and the owners of the other side the right of soil or ownership, and fishing unto the
 
 JUinn aquce
 
 on their side; and, if aman be owner of the land on both sides, in common presumption, he is
 
 the owner of the whole river,
 
 and hath the right of fishing according to the extent of his land in length.” From which, it appears that in Lord Hale’s opinion, the right cf fishing depends upon the right of soil, and, consequently, a grant of the soil must be shewn, or a grant of the fishery from the owner of the soil. Neither is pretended in this case ; for it is admitted, that the law has at all times forbidden a grant of the soil, and the right of the fish
 
 *285
 
 ery is claimed, not by a grant of it as an independent right, but as an incident to the propriety of the soil adjacent.
 

 It is said, however, that one of the defendants made the grant to the plaintiff’s assignor, and that as against him, it is to be assumed to be valid. To this there are several answers. From the terms of the contract, taken in the whole, it is rather to be inferred that the subject of the lease was the land adjacent to the Sound, the beach, fish-houses, and other erections on “ the premises,” and not the right ot fishing, as such. The right to land, cure, and store the fish, was the important privilege contracted for. But, however that may be, it is very clear that a grant of a several fishery in the ocean or other navigable water by an individual, who could not acquire it from the State, must be merely void ; and therefore it cannot estop.
 

 LTpon the whole, then, the court is of opinion, that the action must fail for the want of title in the plaintiff to the several fishery claimed by him; which is not merely the right of drawing his seine to his beach in exclusion of others, but is the sole right of fishing, independently of all others, in a certain portion of the waters of Albemarle Sound. To such an action it is a good plea, that being a navigable water, every citizen of the State of right has the liberty and privilege of fishing. 3 Chit. Pl. 1108.
 

 We agree with the plaintiff’s counsel, that the industry and enterprise of many of our fellow-citizens in some parts of the State may be seriously checked by thus holding fisheries in our large waters not to be sole proprietory rights ; as, to some extent at least, we learn, they have been considered and treated by those engaged in fishing, among themselves. We doubt not, that they will so continue to deal with each other as not unnecessarily or materially to interfere with their operations. Indeed, the court would have gone far to sustain any long and established usage between the different fisheries, if such had been shewn. And if experience should prove the necessity or utility of further regulations upon the subject, there is a ready access to the legislature ; by whose wisdom every mischief can be remedied.
 
 *286
 
 But as a question depending on the mere right, the court can do no less than decide by the existing law ; by which the right of fishery in Albemarle Sound is, we think, common and not several.
 

 Per Curiam. Judgment reversed, and
 
 venire de novo.
 

 
 *288
 
 L