RuffiN, J.
 

 The charter of the town of Beaufort, by the act of 1854, expressly extends the boundaries of the town to low water mark on Core Sound, and vests the land between Front street and the sound, including that between high and low water marks, in the commissioners of the town, with authority to lay it off into lots and convey them in fee simple. The lessor of the plaintiff claims, therefore, under an explicit legislative grant, and has a good title, unless the land had been divested out of the State by a prior valid grant. The question depends, then, on the sufficiency of the patent to the defendant of February 18th, 1853. It is stated that the premises are a part of the shore of the core sound, a navigable arm of the sea, in which there is a regular ebb and How of the tide daily, and consists of the land between the high and low water lines. Such land may be granted by the sovereign. It is fully established, affirmatively, in England;
 
 Constable's
 
 case, 5 Rep. 106; and there are several modern cases to the
 
 *184
 
 same purpose. Indeed, the plaintiff’s title depends on the correctness of that position. The enquiry is, therefore, reduced to the point whether, in our law, a patent, founded oil an entry, in the ordinary way, is a legal and sufficient grant, so as to give the defendant the better title. The Court is of opinion that it is not. The acts of 1715 and 1777, in regulating entries and surveys, on which to found a grant, provided that land, lying on any navigable water, should be surveyed, so that the water should form one side of the survey, whether the water was the sea or a bay, creek or river. In
 
 Tatum
 
 v. Sawyer, 2 Hawks’ 226, Judge HeNdeesoN intimated that those provisions could not be considered as prohibiting the entry of land covered by navigable waters, but said, nevertheless, that it was not subject to entry, because, being necessary for public purposes, as common highways, it was to be presumed not to have been within the intention. It happened, however, that in the revisal of 1836, those parts of the previous acts were omitted, and, therefore, the Court felt bound to hold, in
 
 Hartfield
 
 v. Grimstead,
 
 7
 
 Ire. 139, that entries of land in Curri-tuck sound were good, after it ceased to have a tide, or be navigable by reason of the closing of the inlet, or, rather of such parts of the sound as were frequently not covered by water. When the omissions of the Bevisal were discovered, in 1846, the Legislature, by an act of that year, c. 36, revived the provisions omitted, by enacting that entries of land lying on any navigable water, should be surveyed in such manner, that the water should form one side of the survey, and the land bo laid off back from the water, and proceeded further to enact, that it should not be lawful to enter land covered by any navigable sound, river, or creek. That was the law in force at the time the defendant’s entry was made and his grant obtained. It removed the doubt expressed in
 
 Tat%vm\. Sawyer,
 
 by a positive prohibition of entries of land covered by any navigable waters, and it directs land, on such waters, to be laid off back from the water, so that the water should form one side of the tract. The only point, then, in this case is, whether, within the proper construction of the act, this is
 
 *185
 
 land covered by a navigable water, or is it land laid off from the water. In putting a construction on those terms, we may be aided by looking to the common law on this subject, and by considering the purpose of imposing this restraint on the right of private entry, by the statute. In England, it is not generally necessary to go back to a grant from the Crown, in order to show title to land in a subject; for lands are all occupied there, and have been occupied so long, that, if in theory, they once belonged to the sovereign, they are assumed, in fact, to belong now to a subject. But to that general rule, lands lying between the high and low tides are an exception ; and to such lands a grant must be shown at this day, or a presumption, which supposes a grant. The reason is that the sovereign, by prerogative, for the benefit of all his subjects, has the dominion of all navigable waters, within his dominions, and by consequence, the right to the soil covered by them. That is not confined to such portion of the soil as is always covered by the water, but comprehends also the shores or such land as is between the lines of the ordinary ebb and reflux of the tide. So it is laid down in the treatise
 
 De Jure
 
 Maris, 12, attributed to Lord Hale ; also in
 
 Bulstrode
 
 v.
 
 Hall,
 
 1 Sid. 149, and in the
 
 Attorney General
 
 v. Parmeter, 10 Price, 378. And in Wollrych on Waters, 438, it is said, that “ this sovereignty of the soil is to be acknowledged beyond the main ocean ; for the arms of the sea and tidal rivers, are not the less parcels of the maritime empire, because they are more confined ; and hence the shore, or territory, between what is called high and low water mark, must not be considered as less covered by the water, because it is periodically affected by a reflow.” It seems, thus, to be clear, that whatever soil is at any time covered by a navigable water in its natural state is deemed to be in the same state as if it were in the bed of the water; in other words, that it is all one, whether it be under the channel or be the margin between the high and low water lines. The same public purposes require that, here, as in England, the State should reserve lands in that situation from private appropriation; and although it may please the
 
 *186
 
 Legilature to dispose of them by special grant for the promotion of trade and the growth of a commercial town, accessible to vessels, it rationally accounts for the restriction upon the common mode of granting other public land and enables us to discover the extent of the restriction imposed, and understand the terms in which it is imposed. Thus considered, it seems to the Court, plainly, that up to high water mark, the shore is land covered by water, and consequently is not subject to entry.
 

 Per Curiam, Judgment affirmed.