STATE· v. NARROWS· ISLAND CLUB.

*Navigable Waters, what are ; and Obstruction of—Indictment*
*for Obstructing water-course, at common law; and under § 1123,*
*of The Code.*

1. Waters navigable in fact are navigable·in law, and to that extent and. for that purpose, *publici juris.*

2. The bed of lake or water-course may be private property, but if the· waters are navigable in their natural state, the public have an· easement of navigation in them, which easement the owner of the soil cannot obstruct.

3. This ruling is not in contravention of *State* v. *Glenn,* 7 Jones 321,. because, in that case, the river was ascertained to be *unnavigable.*.

4. An averment,. that the obstruction charged was not "for the purpose· of utilizing the water as a motive power," etc., is essential in an indictment under § 1123, of *The Code.*

5. But to obstruct a navigable water-course, three or four hundred yards long and equally wide, capable of navigation by a sloop drawing three or four feet of water, is indictable at common law, and the common law form of indictment is sufficient.

6. Iron posts from two to three inches in diameter, driven into the bed. of a navigable water-course, and projecting several feet above the· water, are a nuisance *per se,* and the putting them into such water-course is indictable.

7. Upon the trial of an indictment for obstructing a navigable water-course, it is not necessary to charge or prove that actual damage· or injury has been suffered by any vessel, etc. It is sufficient if· the acts charged have rendered navigation· less secure and expeditious.

INDICTMENT, for obstructing a navigable water course,. tried before *Graves, J.,* and a jury, at Fall Term, 1887, of CURRITUCK Superior Court.

Verdict and judgment against the defendant, from which· it appealed to this Court.

The bill of indictment was as follows:

"The jurors for the State upon· their oaths present, that

·the Narrows Island Club, a corporation under the laws of North Carolina, in Currituck County, on the first day of March, 1886, a certain part of Currituck Sound, known as ·the 'Big Narrows,' which sound leads and runs from the .Albemarle Sound to the Black Water River, which is and has been a common highway for the citizens of said State . and county with lighters, boats and canoes to navigate said ·sound, pass and labor at their will and pleasure—without .any impediment or obstruction—unlawfully, willfully and injuriously did erect, place and put in said Big Narrows and highway there, certain iron pipes, and unlawfully and willfully doth continue said obstructions and impediment, by ·means of which the free passage and navigation of, in, through and upon the said Big Narrows is greatly obstructed, so that the citizens of said county navigating, sailing, rowing and repassing with their lighters, boats and canoes upon said water course could not so get over, sail, row, pass and repass with their boats upon said water in so free and uninterrupted a manner as of right they ought, and before have been used and accustomed to do—to the great damage and · common nuisance of all the said citizens navigating, rowing, passing and laboring with their boats aforesaid, upon, to and through the said water, contrary to the statutes in such case made and provided, and against the peace and dignity of the State."

The defendant pleaded not guilty, and that it was the owner of the land on which the alleged obstructions were · erected. It admitted the erection of the pipes or rods by it, and claimed that it had a right so to do.

It was conceded by the State, that the defendant's claim of title is under a grant from the State to one Sanderson, and mesne conveyances, in a regular chain, to the defendant corporation; and that the obstructions, charged in the indictment, were within the boundaries of the grant aforesaid.

On the trial, it was shown by the State, that the Big Nar-

rows was a part of Currituck Sound, and was three or four hundred yards long and equally wide. That a sloop drawing three or four feet of water had gone through it. That it was mostly used for battery boats, flat boats and skiffs, drawing from eight to eighteen inches of water. That it had been used for navigation by such crafts for twenty years. That boats laden with melons, fish, game and other freight for market, passed through it. That the obstructions put in by defendant were dangerous to and impeded navigation, although no actual injury had been done to any vessel thereby. The obstructions consisted of iron posts, from two to three inches in diameter, set in the earth under the water, and standing perpendicularly through, and several feet above the water. There were several of these posts, some of them in the deepest part of the water, in the course usually taken by boats, &c., passing through the Big Narrows. The posts were put up by defendant to mark the boundaries of its property.

The defendant asked for the following special instructions:

"That if the water, known as the Big Narrows, is included. in the boundaries of the Sanderson grant, and cannot be navigated by Sea vessels, and the tide does not regularly ebb and flow in it, then said water is, in a legal sense, unnavigable, although, in fact, sufficiently wide and deep to be navigable by boats and flats and rafts; and under such conditions the land covered by the water of the Big Narrows was open, to be appropriated by grant from the State under the entry law, and the defendant, as owner of said land, [would not be guilty of a misdemeanor in erecting pipes thereon]."

The Court gave the instruction, with the exception of the words embraced in brackets, and the substitution of " is " for " as " in the line preceding the first bracket, and added to the instruction, thus modified, the following: " But if the

land was covered by water of sufficient depth for the passage of skiffs, canoes, schooners, fishing boats, hunting boats and battery boats, and the public had used the water as a public highway, although the title to the land may be in the defendant, the public would have such right of user for purposes of transportation; but for no other purpose, such as fishing or hunting. And if the defendant placed obstructions in the way thus used continuously by the public, the defendant would be guilty."

The defendant excepted to the refusal of the Court to give the instruction as requested, and to the instruction given in lieu of the clause stricken out.

The defendant also asked for the following special instruction : "That if the waters described in the indictment were navigable waters, yet if the obstructions described therein, as having been erected by the defendant, did not obstruct [the natural flow of] the water, and retard or endanger the navigation thereof, then the defendant would not be guilty of a misdemeanor in erecting the rods described in the indictment."

The Court gave the instruction with the exception of the words between brackets, which words were left out.

Defendant excepted.

The Judge, in his general charge to the jury, instructed them, that the question whether the pipes or posts were an obstruction to navigation was a question of fact alone, and exclusively within their domain.

*Attorney General*, for the State.
*Mr. L. D. Starke*, for the defendant.

MERRIMON, J. We need not decide whether the grant from the State, under which the defendant claims title to the land covered by the water called " Big Narrows," charged in the indictment to have been obstructed, was or was not void.

The evidence produced on the trial went directly to prove, and the jury found by their verdict, that the water was part of a navigable sound, and that it was, in fact, navigable for a large class of useful vessels, and had been used by the public for the purposes of navigation for a long while— twenty-five or thirty years, and perhaps longer. If the water referred to was thus navigable, the public had the right to use the same for the purposes of a high-way and navigation, notwithstanding the defendant may have been the owner of the bed of the river or sound. In that case, it was not material for the jury to inquire whether the defendant was such owner or not.

Navigable waters are natural high-ways—so recognized by government and the people, and hence, it seems to be accepted as a part of the common law of this country, arising out of public necessity, convenience and common consent, that the public have the right to use rivers, lakes, sounds and parts of them, though not strictly public waters, if they be navigable, in fact, for the purposes of a high-way and navigation, employed in travel, trade and commerce. Such waters are treated as *publici juris,* in so far as they may be properly used for such purposes, in their natural state. The public right arises only in case of their navigability. Whether they are navigable or not depends upon their capacity for substantial use as indicated. They can be so used only for the free passage of vessels; the public have only the right of navigation. The title to the bed of the river, lake or sound, in such case, and all special privileges and advantages incident thereto vest and remain in the owner thereof, subject only to the public easement. He may use the land and whatever is incident to it, including the water over it, in such lawful way as he will, if, in so doing, he does not impede or interfere materially with navigation. The limited right of the public is paramount, and shall not be abridged. *Broadnax* v. *Baker,* 94 N. C., 675; *Hodges* v. *Williams,* 95 N.

100—31

C., 331; Gould on Waters, §§ 86, 87, 90, 110; Wood on Nuisances, §§ 576, 577, 579, 580.

The learned counsel for the appellant pressed upon our attention, *State* v. *Glenn*, 7 Jones, 321, as an authority favoring strongly the absolute right of the owner of the whole bed of the river. This is certainly a misapprehension of the real meaning of that case. The river to which it referred was ascertained to be *unnavigable*, and the case does not contravene what we have here said. Indeed, the Court recognized the public right in case of the navigability of the stream. It said: "As the riparian proprietor of the land on both sides of the stream, he is clearly entitled to the soil entirely across the river, subject to an *easement* in the public, for the purposes of the transportation of lime, flour, and other articles, in flats and canoes." It appeared that flat boats were occasionally used in transporting the articles named.

It seems that the pleader intended that the indictment should charge an offence under the statute, (*The Code*, § 1123,) prohibiting the obstruction of water courses, but it cannot be sustained for such purpose, because that statute provides that: "If any person shall willfully fell any tree, or willfully put any obstruction, *except for the purposes of utilizing water as a motive power*, on any branch, creek," &c., and the indictment does not charge, as it should do, that the obstruction charged was not "for the purpose of utilizing," &c. Such charge is essential; without it, it might be, the obstruction was for a lawful purpose, and there would be no offence. *State* v. *Norman*, 2 Dev., 222; *State* v. *Tomlinson*, 77 N. C., 528; Arch. Cr. Pl., 25. Moreover, it may be doubted, whether the statute was intended to embrace this and like cases.

But to obstruct a navigable water like that in question, is indictable at common law, and we think the indictment should be upheld as sufficient to charge the common law offence. *State* v. *Parrott*, 71 N. C., 311.

We cannot doubt that the iron posts—from two to three

inches in diameter—set in the earth, under the water, and standing perpendicularly through and several feet above it, at the places and as described by the witnesses on the trial, were dangerous, *per se*, to the class of vessels that passed and repassed through the waters mentioned in the indictment. They were a standing menace to navigation, and though it did not appear in evidence, that any vessel had suffered harm from them, in the nature of the matter, many vessels might have done so, and the evidence tended so to prove, and the jury so found. It is not necessary that obstructions, placed in the way of navigation, should have actually interferred with and done it injury, to render them a nuisance— it is sufficient to make them such, if they rendered such navigation less convenient, less secure, and less expeditious; it must be free and unobstructed by artificial impediments, or dangers. Wood on Nuisances, §§ 607, 608, 613.

The Court should have instructed the jury, that if the iron posts were such as described, and were set in the way of navigation, as charged in the indictment, they constituted a nuisance; but any error in this respect was cured by the verdict of guilty.

The instructions of the Court to the jury were quite as favorable to the defendant, as it was entitled to have, and the judgment must be affirmed.

No error.                                    Affirmed.