The facts are sufficiently stated in the opinion of the Court by Mr.Chief Justice Clark.
This is a proceeding for a mandatory injunction to prohibit the defendant from further maintaining or adding to a building which is built so near to a public bridge over the Neuse River as to prevent the draw therein from being operated except in one direction. For something over one hundred years the county of Lenoir maintained a bridge across Neuse River, a navigable stream at that point. In 1884 *Page 302 
the present bridge was built by the county, about 15 feet from where the old bridge stood, and it was furnished with a modern draw-bridge which was constructed for the purpose of turning up or down stream as necessity might arise. There was a draw in the former bridge, but it does not appear whether or not it could be operated in both directions, nor is it material. Revisal, 1318 (8), among other duties, imposes upon the county commissioners that of "providing draws in bridges where same may be necessary for the convenient passage of vessels," etc., and Revisal, 2698, provides that the counties may erect bridges and "shall by their boards of commissioners provide and keep draws in all such bridges."
It is a matter which rests in the discretion of the county commissioners, should they establish draws that turn both ways, certainly unless it were a clear abuse of their powers. Brodnax v. Groom,64 N.C. 244. On the contrary, it is common knowledge that a draw should open both up and down stream, as on high water an emergency may require such to be done in safety to navigation. The bridge or vessels might at times be endangered, or navigation seriously interfered with, if the draw could not be freely turned in either direction, (360) especially in high water.
Though it is not expressly found by the judge, it appears from the admission in the defendant's brief, and is not denied in the evidence, that the building is partly at least, if not altogether, built on land between high and low water mark. The judge finds that it was put there within fourteen months before this action begun and is so close to the bridge that the draw cannot be opened downstream. Indeed, the evidence shows, without contradiction, that the building extends within 2 feet of the bridge on the down side thereof.
By act of Congress the State can authorize bridges to be built over navigable streams wholly within the State, provided the plans are submitted to and approved by the War Department. As the plan of this bridge built in 1884 provided a draw which opened both ways, it must have been so approved, and an obstruction making it less convenient for navigation without the approval of the War Department is doubtless indictable in the Federal court. Nor can its usefulness be impaired by obstructing its operation in any way without the consent also of the board of county commissioners. It might be inferred from his Honor's judgment that he was of opinion that the fact that the building has stood at that point for fourteen months without objection from the county commissioners was an estoppel upon the county. If so, this view is erroneous. In the recent case of Shelby v. Power Co., 155 N.C. 196,Brown, J., says: "It is well settled that unless by legislative *Page 303 
enactment no title can be acquired against the public by user alone, nor loss to the public by nonsuer [nonuser]." Commonwealth v. Morehead, 4 Am. St., 601, and cases cited; 22 Am. and Eng., page 1190. Public rights are never destroyed by long-continued encroachments or permissive trespasses."
The county commissioners, in many cases, might not have their attention called to an encroachment of this kind upon the public rights, or they might not be properly advised as to the injurious effect. Certainly the public cannot lose their rights by the want of vigilance in the temporary occupants of their office. There is no statute of limitations against the public from which a right can be presumed (361) to have been granted by the county commissioners to the defendant to interfere with the use of the public property for his own use, which is the basis of a statute of limitations. Indeed, the statute expressly prohibits the application of the statute of limitations against the public by reason of such encroachment. Revisal, 389.
The land between high and low water mark belongs to an individual onlysub modo and subject to the superior right of the public to use it for all purposes incident to navigation. The erection of a bridge across a navigable stream with a draw, of the most modern construction, opening both ways, is an incident of navigation which cannot be defeated by the erection of a building or other obstruction on such strip of land between high and low water mark, or so near to the bridge as to interfere with the free operation of the draw. Gould on Waters, sec. 151, and cases there cited. Land lying between low and high water mark is not subject to entry. Ward v.Willis, 51 N.C. 183; Land Co. v. Hotel, 132 N.C. 522; S. v. Twiford,136 N.C. 609. At most, the occupant can have only an easement therein subject to the superior right of the public to the use of the stream for navigation, and, as here, for the incidental purpose of a bridge so constructed as to interfere the least with navigation.
The judge below dismissed the action upon the ground, as we understand it, that he knew of no law which required that a draw over a navigable stream should open both ways; that the building had been there for fourteen months without objection by the county commissioners, and because he was "firmly of the opinion that the owner of an opposition store inspired this action." The first two propositions we have discussed. As to the last, the action is brought in behalf of the county by its county commissioners, and it is immaterial whether an opposition storekeeper influenced the commissioners or not. They were discharging their duty in objecting to a longer interference with the free use of the bridge which was provided with a double draw by their *Page 304 
authority when the bridge was erected and which had been approved, and was probably required by the War Department. Nor is it a matter (362) for consideration that to require the defendant to remove his house so as to allow the draw to be operated freely would be an expense to him. He placed his building there without authority of law and in derogation of the public right, and must suffer the consequences of an order to remove it.
This action is brought by "Lenoir County, which sues through the commissioners for the county of Lenoir." His Honor seems to have been of opinion that this was defective in that the action should have been brought by the "board of commissioners," and expresses a doubt whether the defect was cured because no objection was taken by demurrer. Revisal, 1309, constitutes every county a "body politic and corporate," and Revisal, 1310, authorizes a county "to sue and be sued in the name of the county." We see no reason, therefore, why the action might not be brought simply in the name of "Lenoir County," as other actions have been brought to this Court without objection. It is true that there are decisions that a county should be sued through its commissioners, but Judge Pell in his notes to Revisal, 1310, justly calls attention to the fact that the statute had since been amended. Even if it had not been, the designation of the plaintiff would have been sufficient in the absence of a demurrer raising objection thereto. The action was properly brought on behalf of the county.Commissioners v. Lumber Co., 115 N.C. 590.
The order dismissing the action is set aside and, upon the facts found, judgment should be entered requiring the defendant to remove the building within such reasonable time and to such reasonable distance as may be found just, upon investigation by the court below.
Reversed.
Cited: Bell v. Smith, 171 N.C. 118.
(363)