### RESORT DEVELOPMENT COMPANY v. B. J. PARMELE.

(Filed 11 June, 1952.)

**1. Appeal and Error § 6c (2) —**

An assignment of error to the signing of the judgment presents the sole question of whether the facts agreed support the judgment rendered.

**2. Common Law—**

So much of the common law as is not destructive of or repugnant to, or inconsistent with, our form of government and which has not been abrogated or repealed by statute, or become obsolete, is in full force and effect in this State.   G.S. 4-1.

**3. Waters and Watercourses § 11—**

Under the common law rule, the ebb and flow of the tide is the test of navigable waters.

**4. Same—**

Under the decisions of this State, waters which are actually navigable by sea vessels are navigable waters.

**5. Same—**

Chap. 42, sec. 1, of the revised statutes of 1836 did not have the effect of abrogating or repealing the common law rule defining navigable waters, and therefore a State grant issued in 1841 for land under navigable waters as defined by common law could not transfer title thereto.

**6. Same—**

Where it is agreed or found as a fact that all of the *locus in quo* is covered by water at high tide and that adjacent waters are navigable by ocean-going vessels with channels or sloughs running through the land navigable by small motor launches, etc.   *Held:* The North Carolina Board of Education is not vested with authority to convey such land, G.S. 146-1, and no title can be acquired by such conveyance, the land not being swamp land within the meaning of G.S. 146-4.

APPEAL by defendant from *Burney, J.,* Resident Judge of Eighth Judicial District, out of term by agreement, of NEW HANOVER.

A controversy without action under provisions of G.S. 1-250 duly submitted to the court on the following agreed facts:

"(1) The plaintiff is a corporation duly created, organized, and existing under and by virtue of the laws of the State of North Carolina with its principal place of business in the City of Wilmington.   The defendant is a resident of the County of New Hanover and State of North Carolina.

"(2) By an instrument in writing dated July 2, 1951, defendant offered to purchase from the plaintiff, for the sum of $7,626.00, the following described land:

" 'Beginning at the intersection of the southerly or westerly line of the 50-foot right of way conveyed to the Town of Wrightsville Beach by deed

recorded in Book 362, page 138, New Hanover County Registry, with the highwater mark of Banks Channel and Sunset Lagoon; and running thence north 9 deg. 38' west along said southerly or westerly line of said 50-foot right of way to a point located north 9 deg. 39' west 1,346.22 feet from the western line of Lumina Avenue; thence south 56 deg. 45' west 1,880.12 feet; thence south 53 deg. 12' east 301 feet, more or less, to a point in the agreed dividing line between the tract of land conveyed to Charles B. Parmele by the State Board of Education by deed recorded in Book 173, page 129, New Hanover County Registry, and the Stephens-Sneeden grant, said point also bearing about north 89 deg. 22' west from a stone located in the eastern line of Lumina Avenue 300 feet northwardly from its intersection with the northern line of Mallard Street; thence about north 89 deg. 22' west about 445 feet to the Beginning corner of the aforesaid tract conveyed to Charles B. Parmele by the State Board of Education (said point also being the northeast corner of a tract conveyed by the State Board of Education by deed recorded in Book 150, at page 185, New Hanover County Registry, said point now being Colonel Owen H. Kenan's northeast corner); thence with the F. A. Matthes' (now Colonel Owen H. Kenan's) line south 8 deg. 50' west 515 feet, more or less, to a point that would be intersected by an extension westwardly of the northern line of Salisbury Street; thence eastwardly along the extended northern line of Salisbury Street 750 feet, more or less, to a concrete bulkhead; thence in a general northwestward direction with and along the highwater mark of Banks Channel and Sunset Lagoon as they meander to the Beginning'; which offer was accepted by the plaintiff. Said tract is designated by the letters 'F' through 'M' on the map hereto attached and marked 'Exhibit A.'

"(3) The plaintiff has offered to deliver to the defendant a good and sufficient deed with covenants of warranty conveying the fee simple title to the land described in paragraph (2) hereof, and the defendant has refused to accept said deed and pay the agreed purchase price on the ground that he has been advised by his attorney that the plaintiff is not possessed of an indefeasible fee in and to said land.

"(4) Said land lies in Wrightsville Sound, west of Wrightsville Beach, and at high tide is covered entirely by the waters of the sound; at low tide portions of said land, consisting of sand bars and marshland are above water, while other portions are covered with shallow water.

"(5) Said land is bounded on the northeast and east by Wrightsville Beach and by a causeway running northwardly from Wrightsville Beach to the Wrightsville Beach sewerage disposal plant, on the north and west by a continuous tract of more than 2,000 acres of marshland, through which run small shallow creeks or sloughs, which has heretofore been conveyed by the North Carolina State Board of Education to various

individuals, and on the southwest and south by an island known as Shore Acres and by the waters of Banks Channel.

"(6) Banks Channel extends southwestwardly from said land and along the western shore of Wrightsville Beach, a distance of approximately three miles to Masonboro Inlet, at which point its waters enter the Atlantic Ocean, and at a point about one mile south of said land is crossed by a stationary highway bridge. South of the bridge the channel is used by pleasure and commercial vessels, including seagoing vessels up to 75 feet in length. It is possible for vessels of approximately 30 feet in length and having a beam of not more than 10 feet and a clearance of approximately 15 feet to pass beneath the bridge and negotiate the channel northwardly as far as the southern edge of the land described in paragraph (2).

"(7) Two shallow channels or sloughs enter into and upon the land, one on the southeast side and the other on the northwest side, which can be negotiated by small motor launches, outboard motorboats and skiffs at low tide, but neither has a public terminus. The southeast channel or slough, which is known as Sunset Lagoon, ends at the causeway mentioned in paragraph (5); and the northwest channel turns westwardly and runs approximately one mile to the Intracoastal Canal.

"(8) Northeast of the causeway and at the northern tip of Wrightsville Beach lies Moore's Inlet which connects the waters of the Atlantic Ocean and the Intracoastal Canal via a channel known as Stokeley's Cut. Moore's Inlet is very shallow and can be navigated only by small outboard motorboats and rowboats and because of its shallowness is very seldom used by any type of boat. The only way to reach Moore's Inlet by boat from the waters adjoining the *locus in quo,* other than by the ocean through Masonboro Inlet at the south end of Wrightsville Beach, is to travel westwardly about a mile to the Intracoastal Canal, northwardly along the canal to Stokeley's Cut, eastwardly along Stokeley's Cut to the Inlet. The Inlet is now, and has been for a number of years, slowly filling in and growing more shallow.

"(9) It is the purpose of the defendant to dredge sand from the bottom of Banks Channel and the two channels or sloughs referred to in paragraph (7) and to fill in the described land, thereby raising it above the level of high tide and increasing the navigability of the surrounding waters.

"(10) The plaintiff claims title to the land described in paragraph (2) by *mesne* conveyances from Stephen Sneeden, to whom the State of North Carolina issued Grant #1649 on December 3, 1841, which grant is recorded in Book Z, page 68, in the office of the Register of Deeds of New Hanover County. It is agreed by the parties that the description in the

grant covers the *locus in quo.* Moore's Inlet was not in existence at the time the grant was issued, it having been opened by a storm in 1857.

"(11) In addition to claiming under the Sneeden Grant, the plaintiff further ·claims to have acquired title by *mesne* conveyances from Q. B. Snipes, Trustee, to that portion of the *locus in quo* described as follows:

" 'Beginning at a stake near the highwater line of the Sound, said stake being located south 80 deg. 30' west 120 feet from the intersection of the eastern line of Lumina Avenue with the southern line. of Mallard Street (said Mallard Street being in a development known as North Shores, and located near the North end of Wrightsville Beach); thence from the beginning south 80 deg. 30' west 1530 feet to a stake located 300 feet westwardly, as measured parallel with Salisbury Street, from the end of the concrete bulkhead, and also 62 feet northwardly as measured parallel with Lumina Avenue from a westerly extension of the northern line of Salisbury Street; thence north 9 deg. and 30' west 530 feet to a stake in the Parmele-Wright Southern line; thence north 82 deg. and 30' east along the said Parmele-Wright line 1150 feet to a stake; thence continuing along the Parmele-Wright line south 76 deg. and 30' east 600 feet to a stake near the highwater mark of the Sound; thence south 25 deg. west 310 feet to the beginning, the same containing 17.3 acres, more or less;' and designated by the letters 'A' through 'E' on the map hereto attached, the said Q. B. Snipes, Trustee, having a deed executed by the State of North Carolina and the North Carolina State Board of Education on the 31st day of October, 1944, which purports to convey said tract.

"(12) The plaintiff contends that the defendant should be required to purchase under their contract, for that they are the owners in fee simple of the *locus in quo,* and that the public generally, and that land owners to the north and south of the *locus* in particular, have no right, title or interest, riparian or otherwise, in said lands; and that by virtue of their ownership of said land they have the lawful right to construct the above mentioned canal and fill in the above mentioned lands so that the same will be above the level of the waters of Wrightsville Sound.

"(13) The defendant contends that the title of the plaintiff to the land described in paragraph (2) hereof is not good because all of the land at high tide is covered by the waters of Banks Channel, a navigable stream.

"(14) It is agreed that if the title to the entire tract described in paragraph (2) hereof is good that the defendant will fully comply with said contract and pay to the plaintiff the sum of $7,626.00, upon delivery to him of good and sufficient deed executed by the plaintiff; it is further agreed that if the title to the tract described in paragraph (11) is good, the defendant will pay that proportion of the $7,626.00 which the tract described in paragraph (11) bears to the tract described in paragraph

(2), upon delivery to him of good and sufficient deed executed by the plaintiff.

"(15) Plaintiff and defendant agree that this cause may be heard in term or out of term, and in the county or out of the county, by either the Resident Judge of the Eighth Judicial District or by the Judge Presiding over the courts of said District."

When the matter came on for hearing before the resident judge of the Eighth Judicial District, the court entered judgment in which it is stated that the court finds that the questions presented are:

"1. Is the plaintiff the owner of the land described in paragraph 2 of the agreed statement of facts?

"2. If the plaintiff is not the owner of all the land described in paragraph 2 of the agreed statement of fact, is it the owner of that portion of said land which is described in paragraph 11 of the agreed statement of facts?

"3. Can the plaintiff convey all or any portion of the lands described in paragraph 2 of the agreed statement of facts to B. J. Parmele in fee simple, under the agreement between the parties hereto dated July 2, 1951?" and that "The answer to each of the above said questions is 'Yes,' except that the slough known as 'Sunset Lagoon' and the slough running from Banks Channel along the northerly and northeasterly end of Harbor Island, and on to the Inland Waterway, are parts of a navigable stream and free passage over said sloughs shall not be obstructed. Upon the Court's ruling, in reference to the above mentioned Sunset Lagoon and slough, it was stipulated and agreed between the parties hereto that the northern line of Sunset Lagoon should be the lines designated as X-Y-Z, and that the width of the slough running northwestwardly along Harbor Island and southwest of the *locus in quo* shall not be less than 200 feet at low water."

And then the court "ORDERED, ADJUDGED AND DECREED that the plaintiff, Resort Development Company, is the owner in fee simple and can convey good title to the lands described in paragraph 2 of the agreed statement of facts, but it is further ordered, adjudged and decreed that the northern lines of Sunset Lagoon shall not be moved south of the lines designated X-Y-Z on the map, nor shall the width of the slough running northwardly along the eastern side of Harbor Island be made a width of less than 200 feet."

To the signing of the foregoing judgment defendant excepted, and appeals to Supreme Court, and assigns error.

*Carr & Swails for plaintiff, appellee.*
*Kellum & Humphrey for defendant, appellant.*

WINBORNE, J.   The assignment of error, based upon exception to the signing of the judgment from which this appeal is taken, presents for decision one question : Do the facts shown in the agreed statement of facts on which this controversy without action is predicated, support the judgment rendered ?   *Culbreth v. Britt Corp.,* 231 N.C. 76, 56 S.E. 2d 15; *Duke v. Campbell,* 233 N.C. 262, 63 S.E. 2d 255; *In re Hall, post,* 697; and cases cited therein.

While a similar factual situation does not seem to have been presented to this Court, we hold that, in the light of pertinent statutes, the common law, decisions of this Court of kindred character, and general principles relating to navigable waters, the agreed facts do not support the judgment, and that error is made to appear.   Decision on the first two of the three questions stated in the judgment are the determinative factors.

The answer to first question : "Is the plaintiff the owner of the land described in paragraph 2 of the agreed statement of facts ?" pivots on the answer to the fundamental question as to whether on 3 December, 1841, at the time Grant 1649 was issued to Stephen Sneeden, the land therein described, the *locus in quo,* covered by navigable waters, was the subject of entry by, and grant to a private citizen.

In this connection it is appropriate to note that the Revised Statutes of North Carolina (1836) then in effect provided in Chapter 22, Sec. 1, that "All such parts of the common law, as were heretofore in force and use within this State, or so much of the said common law as is not destructive of, or repugnant to, or inconsistent with, the freedom and independence of this State, and the form of government therein established, and which has not been otherwise provided for in the whole or in part, not abrogated, repealed, or become obsolete, are hereby declared to be in full force within this State."

Previously the General Assembly of North Carolina, beginning in 1711, had enacted statutes declaring that "the common law is, and shall be in force in this government."   See Laws of N. C. 1711, Chap. 1, Sec. III (Published in Vol. 25 The State Records of North Carolina by Clark), Laws of N. C. 1715, Chap. 31, Sec. VI, Laws of N. C. 1715, Chap. 66, Sec. VIII, Laws of N. C. 1749, Chap. 1, Sec. VI, Laws of 1777 (First Session) Chap. 25, Laws of 1777 (Second Session) Chap. XIV, Sec. II, Laws of N. C. 1778 (First Session) Chap. V, Sec. II.

Too, it is pertinent to ascertain what are navigable waters both at common law, and under the laws of this State.   While much has been written on the subject, it seems clear that by the rule of the common law, adopted in England, navigable waters are distinguishable from others by the ebbing and flowing of the tides, that is, the ebb and flow of the tide was the test of a navigable stream.   *Hatfield v. Grimsted,* 29 N.C. 139; *Hodges v. Williams,* 95 N.C. 331; *Bond, v. Wool,* 107 N.C. 139; 12 S.E.

281. And it is said that for a time our courts adhered to that definition of the common law. But "the rule now most generally adopted, and that which seems best fitted to our domestic condition, is that all water courses are regarded as navigable in law that are navigable in fact," *Douglas, J.,* in *S. v. Baum,* 128 N.C. 600, 38 S.E. 900. See also *Wilson v. Forbes,* 13 N.C. 30; *Collins v. Benbury,* 25 N.C. 277; *s.c.,* on rehearing, 27 N.C. 118; *Fagan v. Armistead,* 33 N.C. 433; *S. v. Dibble,* 49 N.C. 108; *S. v. Glen,* 52 N.C. 321; *S. v. Narrows Island Club,* 100 N.C. 477, 5 S.E. 411; *S. v. Eason,* 114 N.C. 787, 19 S.E. 88; *Mfg. Co. v. R. R.,* 117 N.C. 579, 23 S.E. 43; *Land Co. v. Hotel,* 132 N.C. 517, 44 S.E. 39; *S. v. Twiford,* 136 N.C. 603, 48 S.E. 586.

In the cases of *Collins v. Benbury, supra,* the headnotes epitomizing the opinions of the Court are to the effect that what is a navigable stream in this State does not depend upon the common law rule, but that waters, which are sufficient in fact to afford a common passage for people in sea vessels, are to be taken as navigable; that is, that all waters which are actually navigable for sea vessels are to be considered navigable waters under the laws of this State.

Tested by these rules the land in question is covered by waters which come within the common law tidal rule, and the rule of navigability in fact applied in North Carolina.

Moreover, as stated in *S. v. Baum, supra,* under the common law of England, streams, distinguishable as navigable waters, were said to be *publici juris,* that is, of public right,—owned by the public and not by any private person,—such common property that "anyone can make use of it who likes." Black's Law Dictionary. And, hence, land covered by navigable waters could not be granted. *S. v. Baum, supra.*

And on the other hand, decisions of this Court hold that waters navigable in fact are navigable in law, and to that extent and for that purpose are *publici juris*—of public right. *S. v. Narrows Island Club, supra.*

In this connection, it appears that in the case of *Tatum v. Sawyer,* 9 N.C. 226, involving a grant from the State, bearing date 21 June, 1819, conveying certain land in Currituck County, near Currituck Inlet, this Court, in opinion by *Henderson, J.,* declared that "Lands covered by navigable waters are not subject to entry under the entry law of 1777, not by any express prohibition in that act, but being necessary for public purposes as common highways for the convenience of all, they are fairly presumed not to have been within the intention of the Legislature."

But in the Revised Statutes of North Carolina (1836), Chap. 42, entitled "An act concerning entries and grants of land," the Legislature provided, in Section 1, "That all vacant and unappropriated lands belonging to this State shall be subject to entry in the manner herein pro-

vided except in the cases hereinafter mentioned . . ." (not pertinent here), but omitted any reference to the provisions of the Act of 1777.

And thereafter the Legislature at its 1846-47 session passed an act, Laws of 1846-47, Chapter 36, in which it is declared "That it shall not be lawful to enter any land covered by any navigable sound, river or creek; and that entries of land lying on any navigable water, shall be surveyed in such manner, that the water form one side of the survey, and the land be laid off back from the water."

And the Legislature, at its 1854-55 session enacted a statute, Chapter 18, Section 1, that "all vacant and unappropriated lands, belonging to the State, shall be subject to entry by any citizen thereof, in the manner here-inafter provided, except: (1) Lands covered by navigable water, and others not here pertinent. This last statute has been re-enacted in The Code as Section 2751; Revisal 1693, C.S. 7540, now G.S. 146-1.

And in *Hatfield v. Grimsted, supra,* an appeal from Currituck County, at Spring Term, 1846, and involving two grants, dated in 1839, located so as to take in a small quantity of the marshes at the banks, and then run out with the channel about 1½ miles into the Sound, the trial court held that the Sound was not the subject of entry. This Court, in opinion by *Ruffin, C. J.,* wrote as follows: "His Honor probably founded his opinion that the grants to the plaintiff were void upon Laws 1715, Rev. Code 6, Sec. 3, and of 1777, Ch. 114, Sec. 10, which directed how land lying on a navigable water should be entered and surveyed, not adverting to the circumstance that those provisions were not in force in 1839, when the grants were issued. Whether the *locus in quo* would have been the subject of entry or not, under those acts, it is not material to inquire; for the Revised Statutes, Ch. 42, omits the acts under consideration, and so left the matter at common law. Now, at common law this land could clearly be granted by the sovereign, for this case does not state any regular flood and ebb of the tide in Currituck Sound since the closing of the inlet. The omission in the act of 1836 has been supplied by an act at the late session of the Assembly which re-enacts those parts of the acts of 1715 and 1777; but while they were dormant, and the common law alone in force, the grants to the plaintiff were valid."

And in *Ward v. Willis,* 51 N.C. 183, involving boundaries of the town of Beaufort as contained in its charter, *Ruffin, J.,* adverting to the above statutes, and cases, had this to say: "The Acts of 1715 and 1777, in regulating entries and surveys on which to found a grant, provided that land lying on any navigable water should be surveyed so that the water should form one side of the survey, whether the water was the sea or a bay, creek or river. In *Tatum v. Sawyer, supra,* Judge *Henderson* intimated that those provisions could not be considered as prohibiting the entry of land covered by navigable waters, but said, nevertheless, that it

was not subject to entry, because, being necessary for public purposes as common highways, it was to be presumed not to have been within the intention. It happened, however, that in the revisal of 1836 those parts of the previous acts were omitted, and therefore the Court felt bound to hold in *Hatfield v. Grimsted,* 29 N.C. 139, that entries of land in Currituck Sound were good, after it ceased to have a tide or be navigable by reason of the closing of the inlet, or rather of such parts of the sound as were frequently not covered by water."

In the light of these decisions we are constrained to hold that the provisions of the Revised Statutes (1836), Chapter 42, Sec. 1, did not have the effect of abrogating, or repealing the common law rule that navigable waters were then *publici juris,* and hence not subject to entry and grant.

The answer to the second question: "If the plaintiff is not the owner of all the land described in paragraph 2 of the agreed statement of facts, is it the owner of that portion of said land which is described in paragraph 11 of the agreed statement of facts?" is found in the fact that that portion of the *locus in quo,* described in paragraph 11 is covered by navigable waters, and is not swamp lands within the meaning of G.S. 146-4. Hence, the North Carolina Board of Education was not vested with authority to convey it. The cases relied upon by appellees are distinguishable in factual situation.

The judgment below is

Reversed.