**SWAN ISLAND CLUB, Inc.**

v.

**YARBROUGH et al.**

No. 6698.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 24, 1953.

Decided Jan. 6, 1954.

W. B. Rodman, Plymouth, N. C., and John H. Hall, Elizabeth City, N. C. (A. B. Stapleton, Providence, R. I., on brief) for appellant.

John B. McMullan, Washington, N. C., and E. K. Powe, Durham, N. C., for appellees.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is an appeal by plaintiff, the Swan Island Club, Inc., from a decree for defendants in three cases brought to obtain injunctions against alleged trespasses on the property of plaintiff. The acts complained of consisted of the maintenance of duck blinds in the navigable waters of Currituck Sound within an area which plaintiff claimed to own under grants from the State of North Carolina. The District Judge found that the duck blinds were located within the navigable waters of Currituck Sound and that they were not shown to have been located within the boundaries of grants made at a time when it was contended that land under navigable waters could be validly granted. He held that a state court proceeding under the Torrens Land Law of North Carolina, upon which plaintiff relied, did not have the effect of vesting title in plaintiff to lands covered by navigable waters, and that, even if plaintiff had title to such land, it held same subject to the hunting and fishing rights of the public as well as the public right of navigation. The facts are fully found and the applicable law ably discussed in the opinion of the District Judge. See 114 F.Supp. 95.

Briefly stated, the facts are that the plaintiff owns 9,236 acres of land, some of it covered by water, lying in Currituck County, North Carolina between the Atlantic Ocean and Currituck Sound. Of this amount only a comparatively small portion was granted between 1838 and 1847, when it is contended that there was no legal impediment to the granting of lands under navigable waters. See Hatfield v. Grimstead, 29 N.C. 139. The remainder of the lands, a part of which was covered by navigable waters, was embraced in grants issued in other years, when there is no question but that land covered by navigable waters could not be validly granted. While there was some testimony to the effect that the alleged trespasses occurred within the boundaries of the grants made between 1838 and 1847, the trial judge held, and we think correctly, that those grants had not been properly located and that he could not find that the alleged trespasses occurred within their boundaries. We clearly would not be justified on the evidence before us in disturbing his findings in this regard.

The plaintiff places its chief reliance in a judgment entered in a Torrens Land Act proceeding conducted with respect to its lands in the year 1927. Under this proceeding plaintiff obtained a judgment in rem as to the validity of its title to all of the 9,236 acres of land claimed by it, 3,051 acres of which is shoal land in Currituck Sound in which are channels of considerable depth that are used for the purposes of navigation. It is admitted that the trespasses complained of occurred within the boundaries of the lands embraced within the judgment obtained in the Torrens proceeding.

We agree with the District Judge that the judgment in the Torrens proceeding could not have the effect of vesting in plaintiff title to lands covered by navigable waters. It is the law of

North Carolina, as it is of a majority of the states where the question has been raised, that the title to lands under navigable waters is held by the state in trust for the use of the public and grants for such lands have been forbidden throughout the state's history.* Resort Development Co. v. Parmele, 235 N.C. 689, 71 S.E.2d 474; Bell v. Smith, 171 N.C. 116, 87 S.E. 987; State v. Twiford, 136 N.C. 603, 48 S.E. 586; Shepard's Point Land Co. v. Atlantic Hotel, 132 N.C. 517, 44 S.E. 39, 61 L.R.A. 937; State v. Baum, 128 N.C. 600, 38 S.E. 900; State v. Narrows Island Club, 100 N.C. 477, 481, 5 S.E. 411–412, 6 Am.St. Rep. 618; notes 23 A.L.R. pp. 765–773, 791–794, 112 A.L.R. pp. 1111–1112, 1117–1118. This rule, based on the theory that such lands are held by the state in trust for the public at large, was well stated by Mr. Justice Field in Illinois Central Railroad Co. v. Illinois, 146 U.S. 387, 13 S.Ct. 110, 36 L.Ed. 1018 in a passage quoted with approval by the Supreme Court of North Carolina, speaking through the late Judge Henry G. Connor, in Shepard's Point Land Co. v. Atlantic Hotel, supra [132 N.C. 517, 44 S.E. 42], as follows:

"'The interest of the people in the navigation of the waters and in commerce over them may be improved in various instances by the erection of wharves, docks, and piers therein, for which purpose the state may grant parcels of the submerged land, and, so long as their disposition is made for such purpose, no valid objection can be made to the grants. It is grants of parcels of land under navigable waters that may afford foundation for wharves, piers, docks, and other structures in the aid of commerce, and grants of parcels which, being occupied, do not substantially impair the public interest in the lands and waters remaining, that are chiefly considered and sustained in the adjudged cases as a valid exercise of legislative power, consistently with the trust to the public, upon which such lands are held by the state. But that is a very different doctrine from the one which would sanction the abdication of the general control of the state over lands under the navigable waters of an entire harbor or bay, or of a sea or lake. Such abdication is not consistent with the exercise of that trust which requires the government of the state to preserve such waters for the use of the public. The trust devolving upon the state for the public, and which can only be discharged by the management and control of property in which the public has an interest, cannot be relinquished by a transfer of the property. The control of the state for the purposes of the trust can never be lost except as to such parcels as are used in promoting the interests of the public therein, or can be disposed of without any substantial impairment of the public interest in the lands and waters remaining. It is only by observing the distinction between a grant of such parcels for the improvement of the public interest, or which when occupied do not substantially impair the public interest in the lands and waters remaining, and a grant of the whole property in which the public is interested, that the language of the adjudged cases

* In the light of the decision in Resort Development Co. v. Parmele, supra [235 N.C. 689, 71 S.E.2d 480], lands under navigable waters were not subject to grant even between the years 1837 and 1846, the court pointing out that the decision in Hatfield v. Grimstead, 29 N.C. 139, was made at a time when Currituck Sound was thought not to be navigable because of the application of the old test of the ebb and flow of the tide. After analyzing the applicable decisions, the court said: "In the light of these decisions we are constrained to hold that the provisions of the Revised Statutes (1836), Chapter 42, Sec. 1, did not have the effect of abrogating, or repealing the common law rule that navigable waters were then publici juris, and hence not subject to entry and grant."

can be reconciled. General language sometimes found in the opinions of the courts, expressive of absolute ownership and control by the state of lands under navigable waters, irrespective of any trust as to their use and disposition, must be read and construed with reference to the special facts of the particular case. A grant of all the lands under the navigable waters of a state has never been adjudged to be within the legislative power; and any attempted grant of the kind would be held, if not absolutely void on its face, as subject to revocation. The state can no more abdicate its trust over property in which the whole people are interested, like navigable waters and soils under them, so as to leave them entirely under the use and control of private parties, except in the instance of parcels mentioned for the improvement of navigation and the use of the waters, or when parcels can be disposed of without impairment of the public interest in what remains, then it can abdicate its police powers in the administration of government and the preservation of the peace. So with trusts connected with public property or property of a special character, like lands under navigable waters, they cannot be placed entirely beyond the direction and control of the state. * * * We cannot, it is true, cite any authority where a grant of this kind has been held invalid, for we believe that no instance exists where the harbor of a great city and its commerce have been allowed to pass into the control of a private corporation. But the decisions are numerous which declare that such property is held by the state, by virtue of its sovereignty, in trust for the public. The ownership of the navigable waters of the harbor and of the lands under them is a subject of public concern to the whole people of the state. The trust with which they are held, therefore, is governmental, and cannot be alienated, except in those instances mentioned of parcels used in the improvement of the interest thus held, or when parcels can be disposed of without detriment to the public interest in the lands and waters remaining.' "

In State v. Twiford, supra [136 N.C. 603, 48 S.E. 588], a case involving a creek which was tributary to Currituck Sound and was held to be navigable water, because navigable in fact, the Supreme Court of North Carolina, speaking through the late Chief Justice Clark, used the following pertinent language:

"Navigable waters are free. They cannot be sold or monopolized. They can belong to no one but the public, and are reserved for free and unrestricted use by the public for all time. Whatever monopoly may obtain on land, the waters are unbridled yet."

In the light of the public policy thus declared, we do not think that the legislature of the state in the passage of the Torrens Act, General Statutes of North Carolina, ch. 43, could have intended that title should be vested by a judgment entered in the proceeding with respect to land under navigable waters. Is it conceivable that the owner of lands on both sides of a navigable river, such as the Cape Fear at Wilmington, could get title to the bed of the stream by describing his land as embracing the river in a Torrens proceeding, or that title to lands within the three mile marginal strip of the ocean could be thus obtained? To ask such questions is to answer them. While the language of the Torrens Act is general in its terms, it is but reasonable to read into it an exception with respect to lands lying under navigable waters. As said in United States v. Kirby, 7 Wall. 482, 486–487, 19 L.Ed. 278; "All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. It will always,

therefore, be presumed that the legislature intended exceptions to its language, which would avoid results of this character. The reason of the law in such cases should prevail over its letter." See also Sorrells v. United States, 287 U.S. 435, 446–448, 53 S.Ct. 210, 77 L.Ed. 413; United States v. Chemical Foundation, 272 U.S. 1, 18, 47 S.Ct. 1, 71 L.Ed. 131; Baender v. Barnett, 255 U.S. 224, 226, 41 S.Ct. 271, 65 L.Ed. 597; United States v. Jin Fuey Moy, 241 U.S. 394, 402, 36 S.Ct. 658, 60 L.Ed. 1061; Territory of Hawaii v. Osaki Mankichi, 190 U.S. 197, 214, 23 S.Ct. 787, 47 L.Ed. 1016; Lau Ow Bew v. United States, 144 U.S. 47, 59, 12 S.Ct. 517, 36 L.Ed. 340; Church of the Holy Trinity v. United States, 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226.

The purpose of a proceeding under the Torrens law is to remove clouds from title and resolve controversies with regard thereto, not to validate title to lands which under the law of the state, which everyone is presumed to know, are not subject to private ownership. We think it clear that in the Torrens proceeding the court was without jurisdiction to render any judgment affecting title to land covered by navigable waters and that with respect to such lands the decree relied on is a nullity, although valid with respect to other lands therein embraced. It is elementary that a judgment is void if beyond the powers granted to the court. 31 Am. Jur. p. 70; United States to Use of Wilson v. Walker, 109 U.S. 258, 3 S.Ct. 277, 27 L.Ed. 927.

Even if title were held to have been vested in plaintiff to the lands beneath navigable waters, we think that the District Judge was correct in holding that they would be subject to the same trust in behalf of the public that would affect them if title were held by the state. This is the logical application of the trust doctrine recognized in North Carolina. It was thus applied by the Supreme Court of Michigan in Collins v. Gerhardt, 237 Mich. 38, 211 N.W. 115, 118, where that court used the following pertinent language:

"Now, it being the fact that the state of Michigan acquired title to all of the beds of its navigable waters in perpetual trust for the preservation of the public right of navigation, fishing, etc., and Pine river being navigable, how has it come about that the plaintiff, as riparian owner, has secured a title unimpressed with this trust? The answer is that he has no such title. If he has derived his title by purchase and grant from the state, he has taken it subject to the same trust with which it was impressed while vested in the state. If he derived it by patent from the United States, he took it subject to a like trust. Neither the United States nor the state of Michigan could divest itself of this trust. As was said in Nedtweg v. Wallace, supra [237 Mich. 14, 208 N.W. 51, 211 N.W. 647]: 'There has arisen, out of centuries of effort, limitation of crown prerogative, parliamentary action, numerous adjudications, common necessity, and public forethought, a rule beyond question, impressing rights of the public upon all navigable waters. * * * The state may not, by grant, surrender such public rights any more than it can abdicate the police power or other essential power of government.'"

See also Rushton ex rel. Hoffmaster v. Taggart, 306 Mich. 432, 11 N.W.2d 193; Nedtweg v. Wallace, 237 Mich. 14, 208 N.W. 51, 211 N.W. 647; Muench v. Public Service Commission, 261 Wis. 492, 53 N.W.2d 514, 55 N.W.2d 40; Diana Shooting Club v. Husting, 156 Wis 261, 145 N.W. 816, Ann.Cas.1915C, 1148 and note at 1152; Willow River Club v. Wade, 100 Wis. 86, 76 N.W. 273, 42 L.R.A. 305; Bohn v. Albertson, 107 Cal.App.2d 738, 238 P.2d 128; Forestier v. Johnson, 164 Cal. 24, 127 P. 156; Natcher v. City of Bowling Green, 264 Ky. 584, 95 S.W.2d 255; Bell v. Smith, supra, 171 N.C. 116, 87 S.E. 987, 989.

In the case last cited Chief Justice Clark said:

"This was the case of a seine fishery, the owner of which claimed an exclusive right. The grant under which the plaintiff claims is silent with reference to any fishing right, and there is nothing therein indicating an intention to give the grantee an exclusive right of fishery. No person has a several or exclusive right of fishery in any of the public navigable waters of the state. * * * The right of fishing in the navigable waters of the state belongs to the people in common, to be exercised by them with due regard to the right of each other, and cannot be reduced to exclusive or individual control either by grant or by long user by any one at a given point. Such right must be exercised, in the absence of express regulations by the state, with due regard to the rights of all under the general custom of fishing in the Sound. There could be no valid entry of lands covered by navigable waters."

There was no error and the judgment appealed from will be affirmed.

Affirmed.